Doug CAGLE, Adrian A. deVogel, Stuart Appelbaum, Don Hopkins, Henry Jenkins, and Lenore Miller, as Trustees and Fiduciaries of the Retail, Wholesale and Department Store International Union and Industry Health and Benefit Fund, Plaintiffs,

v.

Darlene FLICK, and Jonathon Flick, a Minor, Through His Parents, Darlene Flick and A.D. Flick, Defendants.

No. CIV. 1:97CV274.

United States District Court, N.D. Indiana, Fort Wayne Division.

March 30, 1998.

Peggy A Hillman, Law Offices of Peggy A. Hillman, Indianapolis, IN, Eugene S. Friedman, Bruce S. Levine, Friedman & Levine, New York, NY, for plaintiffs.

C. David Peebles, Fort Wayne, IN, Rick M. Myers, Bluffton, IN, Jerri Lynn Gawronski, Fort Wayne, IN, for defendants.

## ORDER

WILLIAM C. LEE, Chief Judge.

This matter is before the court on cross motions for summary judgment. The defendants filed a motion for summary judgment on January 7, 1998 to which the plaintiffs responded on February 2, 1998. The plaintiffs filed a motion for summary judgment on January 8, 1998, to which the defendants declined to respond.

### Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). However, Rule 56(c) is not a requirement that the moving party negate his opponent's claim. *Fitzpatrick v. Catholic Bishop of Chicago,* 916 F.2d 1254, 1256 (7th Cir.1990). Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The standard for granting summary judgment mirrors the directed verdict standard under Rule 50(a), which requires the court to grant a directed verdict where there can be but one reasonable conclusion.

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A scintilla of evidence in support of the non-moving party's position is not sufficient to successfully oppose summary judgment; "there must be evidence on which the jury could reasonably find for the plaintiff." *Id. In re Matter of Wildman,* 859 F.2d 553, 557 (7th Cir.1988); *Klein v. Ryan,* 847 F.2d 368, 374 (7th Cir.1988); *Valentine v. Joliet Township High School District No. 204,* 802 F.2d 981, 986 (7th Cir.1986). No genuine issue for trial exists "where the record as a whole could not lead a rational trier of fact to find for the nonmoving party." *Juarez v. Ameritech Mobile Communications, Inc.,* 957 F.2d 317, 322 (7th Cir.1992) (quoting *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

Initially, Rule 56 requires the moving party to inform the court of the basis for the motion, and to identify those portions of the "pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any, which demonstrate the absence of a genuine issue of material fact," *Celotex,* 477 U.S. at 323. The non-moving party may oppose the motion with any of the evidentiary materials listed in Rule 56(c), but reliance on the pleadings alone is not sufficient to withstand summary judgment. *Goka v. Bobbitt,* 862 F.2d 646, 649 (7th Cir. 1988); *Guenin v. Sendra Corp.,* 700 F.Supp. 973, 974 (N.D.Ind.1988); *Posey v. Skyline Corp.,* 702 F.2d 102, 105 (7th Cir.), *cert. denied,* 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983).

So that the district court may readily determine whether genuine issues of material fact exist, under Local Rule 56.1, the moving party is obligated to file with the court a "Statement of Material Facts" supported by appropriate citation to the record to which the moving party contends no genuine issues exist. In addition, the non-movant is obligated to file with the court a "Statement of Genuine Issues" supported by appropriate citation to the record outlining all material facts to which the non-movant contends exist that must be litigated. *See, Waldridge v. American Hoechst Corp. et al.,* 24 F.3d 918 (7th Cir.1994). In ruling on a summary judgment motion the court accepts as true the non-moving party's evidence, draws all legitimate inferences in favor of the non-moving party, and does not weigh the evidence or the credibility of witnesses. *Anderson,* 477 U.S. at 249–251, 106 S.Ct. at 2511. Furthermore, in determining the motion for summary judgment, the court will assume that the facts as claimed and supported by admissible evidence by the moving party are admitted to exist without controversy, except to the extent that such facts are controverted in the "Statement of Genuine Issues" filed in opposition to the motion. L.R. 56.1

Substantive law determines which facts are material; that is, which facts might affect the outcome of the suit under the governing law. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. Irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute. *Id.* The issue of fact must be genuine. Fed.R.Civ.P. 56(c), (e). To establish a genuine issue of fact, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586; *First National Bank of Cicero v. Lewco Securities Corp.,* 860 F.2d 1407, 1411 (7th Cir. 1988). The non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *Id.* A summary judgment determination is essentially an inquiry as to "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251–252. Finally, the court notes that, "[i]t is a gratuitous cruelty to parties and their witnesses to put them through the emotional ordeal of a trial when the outcome is foreordained" and in such cases summary judgment is appropriate. *Mason v. Continental Illinois Nat'l Bank,* 704 F.2d 361, 367 (7th Cir.1983).

### Discussion

The plaintiffs in this action are the Trustees of the Retail, Wholesale and Department Store Union and Industry Health and Benefit Fund ("the Fund"). Defendant Darlene

Flick is the parent of defendant Jonathon Flick, a minor ("the Flicks"). Jonathan Flick suffered an injury and his medical expenses arising therefrom were covered by the Fund. In their motion for summary judgment, the Fund seeks a declaratory judgment (1) ordering the defendants to sign the Fund's Subrogation Agreement and (2) recognizing that the Fund possesses a lien in the amount of $28,473.28 upon any recovery that the defendants receive from a third party as compensation for Jonathon's injury.

The Fund is a non-profit multi-employer benefit fund which provides medical coverage for members of affiliated local unions and their families. As such, the Fund is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.* The Fund relies exclusively on contributions from participating employers, and is operated pursuant to an Agreement and Declaration of Trust ("Trust Agreement"). This Trust Agreement states that the Trustees are vested with "full authority to determine eligibility requirements and to adopt Rules and Regulations setting forth same which shall be binding on the Employees, their families and dependents." Trust Agreement, Art. VI, Sec. 4. The Trust Agreement further provides that "benefits shall be provided and maintained by such means as the Trustees shall in their sole discretion determine." *Id.* at Art. VI, Sec 5. The Fund's Rules and Regulations clearly state that the Plan is entitled to seek subrogation against a beneficiary's recovery in tort, and provide that the Plan may require a beneficiary for whom medical expenses are paid to execute documents such as a subrogation agreement:

> Subrogation seeks to conserve the assets of the Benefit Fund by imposing the expense for Accidental Injuries suffered by Employees or eligible Dependents on those responsible for causing them. If an Employee or one of his Dependents, for example, should receive benefits from the Plan for Injuries caused by someone else (such as an automobile accident), the Plan, through subrogation, has the right to seek repayment from the other party or his insurance company, or in the event an Employee or his Dependent recovers the amount of medical expense paid by the Plan by suit, settlement or otherwise from any third person or his insurer, the Plan has the right to be reimbursed through Subrogation.

> The Plan will provide benefits to Employees and their Dependents at the time of need, but the Employee and/or his Dependents (or the Employee on behalf of a minor or incapacitated Dependent) will be asked to execute documents or take such other action as is necessary to assure the rights of the Plan.

Rules and Regulations, Art. VII.

Defendant Darlene Flick is a participant in the Fund. In June 1993, Darlene Flick's twelve-year old son, Jonathon, fractured his hip in an accident. Jonathon received treatment for these injuries, and the Fund paid $28,473.28 in claims for medical services. On or about November 19, 1993, the Fund was informed that Jonathon's injuries may be attributable to a third party against whom Jonathon might have a cause of action. On or about November 19, 1993, the Fund's Office Manager sent the Flicks' attorney a copy of the Fund's Subrogation Agreement, requesting that it be executed.

In correspondence to the Fund's Office Manager dated November 30, 1993, the Flicks' attorney, Rick M. Myers ("Myers"), noted that the Subrogation Agreement did not provide for attorneys' fees to be subtracted from the Fund's subrogation recovery. Myers stated that the Flicks had entered into a contingent fee agreement that would pay him one-third of any amount recovered, plus all expenses of litigation.

Additionally, in a letter dated March 1, 1994, Myers stated that his clients would not sign the Subrogation Agreement without written assurance from the Fund that the Fund would pay its proportional share of attorneys' fees for any amount collected. In a letter dated March 30, 1994, counsel for the Fund advised Myers that the plan requires that the Fund be reimbursed for the full amount of benefits paid.

On or about May 31, 1995, attorney Myers filed suit in Wells Circuit Court of the State of Indiana seeking damages from three indi-

viduals for whom Jonathon Flick had been working at the time of his accident. The suit contends that the individuals are strictly liable for any injuries sustained by Jonathon Flick on the grounds that Indiana law prohibited their employment of a person less than thirteen years of age. This action, *A.D. Flick, Darlene Flick and Jonathon Flick, by his next friends and parents, A.D. Flick and Darlene Flick v. Natalie Milholland, Ronald Milholland and Mona Jean Strong*, Cause No. 09C01–9505–CP–67, is still pending. On or about July 28, 1997, the Fund filed a Motion to Intervene in the state court action, in order to protect the Fund's subrogation rights.

On July 24, 1997, the Fund commenced the present action, seeking an injunction to compel Darlene Flick to sign the Subrogation Agreement. The Fund also seeks a declaratory judgment stating that the Fund is entitled to a lien against any monies that Jonathon Flick receives from a third party as a result of his injury, in the full amount of the claims the Fund has paid on his behalf. The Flicks responded by contending that the Fund does not have the authority to recover from any amount Jonathon Flick may receive from a third party. The Flicks also filed a counterclaim contending that the Fund is not entitled to subrogation of any monies Jonathon receives in the state court action to the extent that these monies do not exceed "out of pocket expenses." The counterclaim further contends that "the Fund cannot require them to pay the attorney fees or litigation costs of the Fund in securing or obtaining the Fund's subrogation interests." In effect, the counterclaim argues that any recovery obtained by the Fund must be reduced by one-third, in accordance with Myers' contingency agreement with the Flicks.

■ As noted above, the Fund's Rules and Regulations provide that the Plan is entitled to seek subrogation against a beneficiary's recovery in tort, and also provide that the Plan may require a beneficiary for whom medical expenses are paid to execute documents such as a subrogation agreement. Where an employee benefit plan governed by ERISA requires a participant or beneficiary for whom the plan pays medical expenses to execute an agreement to reimburse the plan upon recovery of monies from a third party, and the individual nonetheless refuses to execute the subrogation agreement, the plan fiduciaries are entitled to an injunction requiring the individual to sign the agreement. *Cutting v. Jerome Foods, Inc.*, 820 F.Supp. 1146, 1155 (W.D.Wis.1991), *aff'd*, 993 F.2d 1293 (7th Cir.1993).

In the present case, the Fund argues that the Fund's Trustees have determined that the Fund is entitled to full reimbursement regardless of whether a beneficiary for whom the Plan paid medical expenses recovers monies for all damages relating to his injury. Thus, the Fund contends that the Flicks must reimburse the Fund from the first $28,-473.28 that they recover from any third parties as a result of Jonathon Flick's injury, regardless of whether the Flicks' recovery is sufficient to pay all the costs associated with Jonathon's injury. The Fund further contends that to the extent Indiana law would dictate a different conclusion, Indiana law is preempted by ERISA.

Indiana's subrogation statute, IC § 34–4–33–12 governs subrogation claims on a recovery of monies representing less than the full amount sought as compensation for a personal injury. This section provides:

> Diminishment of subrogation claims—Payment of medical expenses or other benefits.

> If a subrogation claim or other lien or claim that arose out of the payment of medical expenses or other benefits exists in respect to a claim for personal injuries or death and the claimant's recovery is diminished:

> (1) By comparative fault; or

> (2) By reason of the uncollectibility of the full value of the claim for personal injuries or death resulting from limited liability insurance or from any other cause;

> the lien or recovery shall be diminished in the same proportion as the claimant's recovery is diminished. The party holding the lien or claim shall bear a pro rata share of the claimant's attorney's fees and litigation expenses.

The Fund points out that this court has specifically found that § 34–4–33–12 is preempted by § 514(a) of ERISA, when applied to an ERISA-governed benefit plan. *See Carpenter v. Modern Drop Forge Co. .,* 919 F.Supp. 1198, 1200 (N.D.Ind.1995); *Murzyn v. Amoco Corp.,* 925 F.Supp. 594, 597, 600 (N.D.Ind.1995). The Fund argues that this finding comports with Congress' intent in adopting § 514(a) to avoid the conflicting results of the application of fifty separate state laws: "The basic thrust of the pre-emption clause . . . was to avoid a multiplicity of regulation in order to permit the nationally uniform administration of employee benefit plans." *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,* 514 U.S. 645, 657, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995).

ERISA itself is silent as to subrogation, thus a controversy has arisen concerning whether it is appropriate for the courts to adopt a "make whole" rule as federal common law. The "make whole" rule would prevent a benefit plan from enforcing any subrogation rights until the injured participant or beneficiary has been fully compensated for all losses. In *Cutting v. Jerome Foods, Inc.,* 993 F.2d 1293, 1298–99 (7th Cir. 1993), the Seventh Circuit Court of Appeals held that the "make whole" rule does not apply in cases where the ERISA plan grants the plan's administrator the discretion to interpret the plan.

The Fund argues that in the present case, the Plan instruments vest the Trustees with discretionary authority to determine eligibility and to construe the terms of the Plan. Specifically, the Trust Agreement provides that the Trustees are vested with "full authority to determine eligibility requirements and to adopt Rules and Regulations setting forth same which shall be binding on the Employees their families and dependents," and that "benefits shall be provided and maintained by such means as the Trustees shall in their sole discretion determine." Trust Agreement, Art VI, Sec. 4, 5.

■ In cases where the Plan gives the administrator or fiduciary "discretionary authority to determine eligibility for benefits or to construe the terms of the plan," the courts may not review the administrator's decisions on a *de novo* basis; rather, the standard of review is whether the plan administrator abused his discretion to arrive at a decision that was "arbitrary and capricious." *Firestone Tire & Rubber v. Bruch,* 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989); *Cutting,* 820 F.Supp. at 1155.

■ It is not disputed that the Fund's Rules and Regulations clearly provide that where the Plan makes payments as a result of accidental injuries to an employee or eligible dependent, and where "the Employee or his Dependent recovers the amount of medical expense paid by the Plan by suit, settlement or otherwise from any third person or his insurer, the Plan has the right to be reimbursed through Subrogation." Rules and Regulations, Art. VII. The Fund points out that the employee benefit plan at issue in *Cutting* employed similar language, stating that the fund was subrogated to "all rights of recovery . . . against any third party or any insurer . . . to the extent of any and all payments made or to be made by the Plan." In *Cutting,* the district court found the administrators' contention that the plan was entitled to full subrogation an eminently reasonable interpretation of this language. Thus, the Fund claims that its Trustees likewise are not unreasonable in interpreting the Rules and Regulations of the Fund to guarantee them full reimbursement for the Fund's payment of Jonathon's medical expenses from the first $28,473.28 he receives from any third party.

■ The Flicks rely on the application of a "common fund" doctrine, which would reduce the amount owing to the Fund by a proportionate share of the Flicks' attorneys' fees. Indiana law, IC § 34–4–33–12, includes language to this effect: "The party holding the lien or claim shall bear a pro rata share of the claimant's attorney's fees and litigation expenses." The Fund, however, points out that this court has determined that ERISA preempts § 34–4–33–12. *Carpenter v. Modern Drop Forge Co.,* 919 F.Supp. 1198, 1201 n. 2 (N.D.Ind.1995).

Recently, the Seventh Circuit stated that § 514(a) of ERISA did not preempt Illinois'

common law regarding the payment of attorneys' fees in the context of subrogation. *Blackburn v. Sundstrand Corp.*, 115 F.3d 493, 494–96. Nevertheless, as the Fund points out, the *Blackburn* Court's statement had no effect on the parties to the litigation, since the court also ruled that it did not have jurisdiction to hear that particular suit, which it considered a tort action that had been improperly removed from state court. *Id.* at 494–95. Additionally, *Blackburn* failed to address *Land v. Chicago Truck Drivers, Helpers & Warehouse Workers Union (Independent) Health & Welfare Fund*, 25 F.3d 509 (7th Cir.1994), in which the Court stated that "this Illinois doctrine is not available to Land, and the terms of the plan require reimbursement of the entire amount without the deduction of any attorney's fees." *Id.* at 511. Nonetheless, at least one district court has relied upon *Blackburn* and stated that ERISA does not preempt the Illinois common fund doctrine. *Hartenbower v. Electrical Specialties Co. Health Benefit Plan*, 977 F.Supp. 875, 885 (N.D.Ill.1997).

By relying on the "common fund" doctrine, the Flicks are asking this court to adopt this doctrine as federal common law. However, as noted earlier, federal common law cannot be employed where the language of the ERISA plan specifically authorizes the plan administrator the discretion to interpret the plan. *Cutting*, 993 F.2d at 1298–99. If the administrator has not interpreted the plan provisions in an "arbitrary and capricious" manner, the administrator's interpretation controls, and federal common law will not apply. In the cases relied upon by the Flicks, *Carpenter v. Modern Drop Forge Co.*, 919 F.Supp. 1198, 1202 n. 3 (N.D.Ind.1995), and *Murzyn v. Amoco Corp.*, 925 F.Supp. 594, 598–99 (N.D.Ind.1995), neither of the plans granted their administrators discretion in interpretation. Thus in those cases, the court was bound to employ a *de novo* standard of review, rather than the more deferential abuse of discretion standard.

The Fund argues that the Trust Agreement grants the Trustees broad discretion to interpret the Fund's Rules and Regulations, which include the Fund's subrogation policy. The Fund further contends that the Trustees' determination that the Fund is entitled to subrogation of the full amount of benefits paid, with no offset for the Flicks' attorney's fees, is reasonable and not "arbitrary and capricious."

This court finds the Fund's position to be well-taken. The Fund's Rules and Regulations specifically provide that the Plan is entitled to seek subrogation. Moreover, it is undisputed that the Fund's Trustees have determined that the Fund is entitled to full reimbursement. It is also clear that the Trustees are vested with full discretion to make such determinations. Accordingly, this court reviews the Trustee's determinations under the abuse of discretion standard. While the Flicks may disagree with the Trustees' determination, it cannot be said that the determination is "arbitrary and capricious." Rather, the Trustees are simply fulfilling their obligations under the Trust Agreement to conserve the assets of the Fund. Thus, it necessarily follows that IC § 34–4–33–12 is preempted and the "make whole" rule does not apply. Therefore, the Fund may seek full reimbursement even if the Flicks have not been compensated for all losses.

Additionally, it is clear that Indiana's "common fund" doctrine does not apply as the court may not employ federal common law when the plain language of the ERISA plan invests the plan administrator with discretion to interpret the plan, and the administrator has not interpreted the plan in an arbitrary and capricious manner. For these reasons, the Fund's motion for summary judgment must be granted.

■ The Fund has also argued that even if ERISA does not preempt the application of the "common fund" section of IC § 34–4–33–12, the Fund's right of recovery may not be reduced to compensate the Flicks' attorney. According to the Fund, Indiana courts have confined such reductions to situations involving a true "common fund," which is available "[o]nly when an action relates to a class of plaintiffs," and never "to a single personal injury claim wholly personal in nature." *In re Lafayette Orthopedic Clinic v. Guardianship of Arthur Bell*, 670 N.E.2d 956, 959 (Ind.Ct.App.1996). Thus, a suit in which a

medical provider may claim recovery through subrogation does not qualify.

> The mere fact that the Clinic has an interest in Bell's recovery to the extent that Bell owes the Clinic for services previously rendered does not translate Bell's cause of action into an action filed on behalf of himself and his medical providers.

*Id.*

Again, the court finds the Fund's position to have merit. Clearly, the Flicks are not pursuing an action for a class of plaintiffs but, rather, are seeking a personal injury claim. As such, the "common fund" doctrine is not applicable to the present case, even if not preempted by ERISA.

The Flicks have also taken the position that because the Fund did not file suit against the third parties alleged to be responsible for Jonathon's injuries, full reimbursement would be inequitable. Yet, it is clear that when the Fund filed a Motion to Intervene in the state court action, the Flicks filed an objection to the motion, claiming that under Indiana law, the Fund was not "entitled to intervention in the above-captioned proceedings as of right or by permission of the Court." Thus, it appears that rather than litigating all the claims together, the Flicks wished to pursue their own action, and have the Fund initiate separate litigation if it desired full reimbursement of the Fund. Clearly, the equities do not weigh in favor of the Flicks.

### Conclusion

For all of the foregoing reasons, the defendants' motion for summary judgment is hereby DENIED, and the plaintiffs' motion for summary judgment is hereby GRANTED. The defendants shall sign the Fund's Subrogation Agreement, and recognize the Fund's lien in the amount of $28,473.28 upon any recovery they obtain from a third party as compensation for the injuries to Jonathon Flick.