**Daniel R. ENGLE and Bonnie L. Engle, Plaintiffs,**

**v.**

**WAL–MART ASSOCIATES HEALTH & WELFARE PLAN, Defendant.**

No. 2:97–CV–317–TS.

United States District Court, N.D. Indiana, Hammond Division.

March 31, 1999.

David Bratz, Crown Point, IN, for Plaintiffs.

Michael Graham, Chicago, Il, Mark Simon, Dallas, TX, for Defendant.

## MEMORANDUM OF DECISION AND ORDER

SPRINGMANN, United States Magistrate Judge.

Daniel and Bonnie Engle brought a declaratory judgment action against Wal–Mart Associates' Health and Welfare Plan ("the Plan") in Indiana state court to require the Plan to reduce its right of reimbursement from their state court settlement by one-third. The Plan removed the Engles' action because their claim presented a federal question under 29 U.S.C. § 1132(a)(3) of the Employee Retirement Income Security Act of 1974 ("ERISA"). The Plan also filed a counterclaim against the Engles under § 1132(a)(3), seeking to compel the Engles to comply with the plan documents and to require them to reimburse the Plan for 100% of medical benefits paid by the Plan for Daniel Engle's medical treatment.

The parties have filed cross-motions for summary judgment. Both parties have consented to the Magistrate. This Court therefore has authority to decide the merits of this case under 28 U.S.C. § 636(c)(1). In addition, this Court has subject matter jurisdiction over each parties' § 1132(a)(3) claims under 29 U.S.C. § 1132(e)(1). On October 27, 1998, the Court conducted a telephonic conference with respect to the cross-motions, in which counsel for the Plan and the Engles participated. In this hearing, the Court advised the parties that the Plan's Motion for Summary Judgment would be granted and the Engles' Motion for Summary Judgment would be denied. This Memorandum explains the bases for the Court's decision.

### I. FACTUAL AND PROCEDURAL BACKGROUND

On December 18, 1990, Plaintiff Bonnie Engle became employed by Wal–Mart Stores, Inc. On March 18, 1991, pursuant to her employment, Bonnie Engle became a participant in the Plan. As a Plan participant, Bonnie Engle elected coverage for

her husband, Plaintiff Daniel Engle. Four years later, on or about March 15, 1995, Daniel Engle was injured in an automobile accident. Under the Plan, Daniel Engle was entitled to coverage for the medical treatment he received for his injuries suffered in the accident. The Plan consequently paid out $18,208.70 in benefits to the Engles for Daniel Engle's injuries.

The Engles ultimately filed a personal injury lawsuit in Lake County, Indiana Circuit Court against the parties they considered responsible for Daniel Engle's injuries. On April 1, 1997, the Engles both signed a "Reimbursement–Subrogation" Agreement, which stated:

> This Plan is a self-funded, self-insured Employee Welfare Benefit Plan governed under the Employee Retirement Income Security Act of 1974, as amended ("ERISA").
>
> The undersigned acknowledges that they have read the rights of Reimbursement, Reduction and/or General Subrogation of the Wal–Mart Group Health Plan (the "PLAN"). Please refer to your benefit book under "THE RIGHTS TO REIMBURSEMENT AND REDUCTION" Section.
>
> This Subrogation Agreement is considered an advance of money. It means you are authorizing the Associates' Group Health Plan to pay benefits with the agreement that repayment to the Plan of 100% will be made at the time settlement/judgment is received by the Participant.

*See* Defendant's Appendix, Ex. C–2.

The Engles ultimately settled their personal injury claims for $100,000. Under the Plan's Associate Benefit Book, effective January 1, 1996 ("1996 Benefit Book"), the Plan possessed a right of 100% reimbursement from any settlement received by the Engles from the parties they considered responsible for Daniel Engle's injuries, without reduction for their attorneys' fees or court costs. On July 3, 1997, their counsel notified the Plan that a settlement was pending and requested the Plan reduce its reimbursement right by one-third for their attorneys' fees and costs.

The Engles' request was passed on to the Plan's Administrative Committee, the Plan Administrator ("the Committee"). The Committee reviewed the Engles' request, interpreting and applying the reimbursement provisions in the 1996 Benefit Book. The Committee determined that the Benefit Book provided the Plan with a right of 100% reimbursement against the Engles for the benefits paid to them for Daniel Engle's injuries, without reduction for their attorneys' fees and costs. On July 14, 1997, the Plan notified the Engles' counsel of the Committee's decision.

On July 27, 1997, the Engles filed the instant Complaint for Declaratory Judgment in the Lake County Superior Court. On September 15, 1997, the Plan removed the Complaint to this Court, asserting that the Complaint raised a federal question under §§ 1132(a)(3) and (e)(1). The Plan also filed a counterclaim against the Engles under § 1132(a)(3), seeking an order requiring the Engles to comply with the plan and to provide it with 100% reimbursement for medical benefits paid. On October 8, 1997, the Engles filed a motion to remand the case to the state court. On January 14, 1998, this Court denied the motion, finding that subject matter jurisdiction over both the Engles' claim and the Plan's counterclaim existed under §§ 1132(a)(3) and (e)(1). On May 13, 1998, the Engles filed their motion for summary judgment. The following day, the Plan filed its cross-motion for summary judgment. The motions are now fully briefed and ripe for adjudication.

## II. SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure requires the entry of summary judgment if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no

genuine issue as to any material fact and the moving party is entitled to summary judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indus. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Although a district court in a summary judgment proceeding must consider evidence in a light favorable to the party opposing summary judgment, that party cannot simply rest on her pleadings. *See Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. The party opposing the motion must do more than merely raise "some metaphysical doubt as to the material facts" in order to survive summary judgment. *Matsushita Elec. Indus.,* 475 U.S. at 586, 106 S.Ct. 1348. Where the non-movant is unable to present evidence that refutes the moving party's allegations, or the allegations presented would not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial and the district court should grant summary judgment. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

Where, as here, cross-motions for summary judgment have been submitted by the parties, the Court is not required to grant judgment as a matter of law for one side or the other. *Dean Foods Co. v. United Steel Workers of America,* 911 F.Supp. 1116, 1122 (N.D.Ind.1995). Rather, the Court must evaluate each party's motion on its own merits, resolving factual uncertainties and drawing all reasonable inferences against the party whose motion is under consideration. *Id.*

## III. DISCUSSION

### A. STANDARD OF REVIEW

■ In actions brought by plan participants or fiduciaries seeking appropriate equitable relief, the threshold question the Court must address is which of two standards of review govern the case. In *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), the Supreme Court established the standard for reviewing a plan administrator's decision. 489 U.S. at 115, 109 S.Ct. 948. The Court held that a plan administrator's decisions are not reviewed *de novo* if " 'the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.' " *Id.* at 115, 109 S.Ct. 948. If the plan gives the administrator or fiduciary that type of authority, the Court is limited to determining whether the decision was arbitrary and capricious. *Russo v. Health, Welfare & Pension Fund,* 984 F.2d 762, 765–66 (7th Cir. 1993); *Saracco v. Local 786 Building Material Pension Fund,* 942 F.2d 1213, 1214–15. In § 1132(a)(3) cases, the arbitrary and capricious standard applies to decisions of a plan administrator cloaked with sufficient discretionary authority. *See Watkins v. Westinghouse Hanford Co.,* 12 F.3d 1517, 1524 (9th Cir.1993); *Korchek v. Nichols–Homeshield,* 1997 WL 619869, *9 (N.D.Ill. Sept.30, 1997); *Oscar A. Samos, M.D. v. Dean Witter Reynolds, Inc.,* 772 F.Supp. 715, 719 (D.R.I.1991); *Columbian Fin. Corp. v. Businessmen's Assurance Co. of America,* 743 F.Supp. 772, 776 (D.Kan.1990), *rev'd on other grounds,* 956 F.2d 277 (10th Cir.1992).

### 1. The 1996 Benefit Book Is The Governing Plan Document

Initially, the Court must determine which plan document governs the Committee's decision and the Plan's reimbursement right at issue. The Plan contends the 1996 Benefit Book in effect when its reimbursement right accrued governs the rights in this case. The Engles argue the plan document in effect at the time Daniel Engle's claims for benefits were paid should apply.

The Engles' claims for benefits are not in dispute here, as they apparently were paid by the Plan in full within a reasonable time. The relevant interest at issue here

is the Plan's reimbursement right. The Plan's right ripened only after the Engles received their settlement in July 1997. *See Unisys Medical Plan v. Timm,* 98 F.3d 971, 973 (7th Cir.1996) (holding plan possessed no claim for reimbursement until the participant settled personal injury suit).

 ERISA requires plan administrators to operate the plan in accordance with current plan documents. *SeeMember Servs. Life Ins. Co. v. American Nat'l Bank and Trust Co. Of Sapulpa,* 130 F.3d 950, 958 (10th Cir.1997). When the Engles received their settlement in July 1997, the 1996 Benefit Book was the controlling plan document. Accordingly, the 1996 Benefit Book is the applicable plan document here.

### 2. The Plan's Decision Is Entitled To Deferential Review

 The 1996 Benefit Book provides the Committee with "discretionary authority to resolve all questions concerning the administration, interpretation, or application of the Plan." *See* Defendant's Appendix, Ex. C–1 at Q2. Such language meets the requirements for deferential review under *Firestone. See also Switzer v. Wal–Mart Stores, Inc.,* 52 F.3d 1294, 1298 (5th Cir. 1995) (Wal–Mart plan administrator vested with sufficient discretionary authority to demand arbitrary and capricious standard); *Murphy v. Wal–Mart Associates' Group Health Plan,* 928 F.Supp. 700, 705 (E.D.Tx.1996) (Wal–Mart Plan unquestionably gives Committee discretionary authority sufficient to review decision under arbitrary and capricious standard). Accordingly, the Court must review the Committee's decision on reimbursement under the "arbitrary and capricious" standard.

### 3. The Arbitrary And Capricious Standard Of Review

 Under the arbitrary and capricious standard, the Court must resolve questions of judgment in favor of the Plan and the Committee. *Patterson v. Caterpillar Inc.,* 70 F.3d 503, 505 (7th Cir.1995).

Before holding the Committee's decision arbitrary and capricious, the Court must be very confident the Committee overlooked something important or seriously erred in its interpretation and application of the plan. *Id.*

 To convince the Court the decision was arbitrary and capricious, the Engles must show the Committee not only wrongly interpreted and applied the plan's provisions, but that its interpretation and application were "downright unreasonable." *Chojnacki v. Georgia–Pacific Corp.,* 108 F.3d 810, 816 (7th Cir.1997). The Court's review of the Committee's decision is limited to the materials and evidence before the Committee when it reached its decision. *Trombetta v. Cragin Federal Bank For Savings Employee Stock Ownership Plan,* 102 F.3d 1435, 1438 n. 1 (7th Cir.1996).

### B. THE PLAN'S DECISION TO RE-QUIRE 100% REIMBURSEMENT WAS REASONABLE

The 1996 Benefit Book provides the Plan with the following right:

**RIGHT TO REDUCTION AND REIM-BURSEMENT (SUBROGATION)**

The Plan has the right to 1) reduce or deny benefits otherwise payable by the Plan and 2) recover (subrogate) 100% of the benefits previously paid by the Plan to the extent of any and all of the following payments:

- Any judgment, settlement, or any payment, made or to be made by a person considered responsible for the condition giving rise to the medical expense or by their insurers.

- Any auto or recreational vehicle insurance coverages or benefits including, but not limited to, uninsured motorist coverage.

- Business and homeowners medical liability insurance coverage or payments.

- Attorney's fees.

*See* Defendant's Appendix, Ex. C–1 at D16–D17. The 1996 Benefit Book also specifically notes that "[a]ll attorney's fees and court costs are the responsibility of the participant, not the Plan." *Id.* at D17.

█ The Committee had the following facts before it when it interpreted and applied the 1996 Benefit Book in response to the Engles' request to reduce its reimbursement right. Daniel Engle was injured in an automobile accident. The Plan paid out $18,208.70 in benefits to the Engles for medical treatment related to Daniel Engle's injuries. The Engles filed suit against the parties they considered responsible for Daniel Engle's injuries. They received a $100,000 settlement from those parties.

The Committee interpreted the Plan's reimbursement provisions and found that because the Engles received a settlement from the parties they considered responsible for Daniel Engle's injuries, the Plan had a right to 100% reimbursement for the benefits it paid to the Engles, without reduction for their attorneys' fees and court costs. The reimbursement language in the 1996 Benefit Book clearly requires 100% reimbursement and explicitly notes the Engles were responsible for their own attorneys' fees and court costs. The Committee's interpretation and application of these unequivocal plan provisions in light of these facts was clearly reasonable and must be upheld.

### C. INDIANA'S ANTI–SUBROGATION STATUTE DOES NOT APPLY

█ The Engles argue that Indiana's Anti–Subrogation statute, Ind.Code § 34–4–41–4, requires the Court to reduce the Plan's reimbursement right by one-third. The Plan asserts that § 34–4–41–4 is preempted by ERISA. Section 34–4–41–4 of the Indiana Code provides that an insurer claiming a subrogation or reimbursement right shall pay a pro rata share of a plaintiff's reasonable and necessary costs and expenses for asserting the third party claim. However, as the Plan argues, § 34–4–41–4 is completely preempted by ERISA.

In *FMC Corp. v. Holliday,* 498 U.S. 52, 56, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990), the Supreme Court held that "self-funded ERISA plans are exempt from state regulation insofar as that regulation 'relates to' the plans." *See also Electro–Mechanical Corp. v. Ogan,* 9 F.3d 445, 450 (6th Cir. 1993); *Hampton Industries, Inc. v. Sparrow,* 981 F.2d 726, 729–30 (4th Cir.1992). In *FMC Corp.,* the Court found:

> To require plan providers to design their programs in an environment of differing state regulations would complicate the administration of nationwide plans, producing inefficiencies that employers might offset with decreased benefits.... Thus, where a "patchwork scheme of regulation would introduce considerable inefficiencies in benefit program operation," we have applied the preemption clause to insure that benefit plans will be governed by only a single set of regulations.

498 U.S. at 60, 111 S.Ct. 403. Judge Lozano of this Court has held that self-funded employee benefit plans are exempt from state law regulating insurance. *See Murzyn v. Amoco Corp.,* 925 F.Supp. 594, 597 (N.D.Ind.1995). A review of § 34–4–41–4 establishes it regulates insurance. Therefore, based upon the *FMC Corp.* and *Murzyn,* § 34–4–41–4 is preempted by ERISA, and does not require reduction of the Plan's right of reimbursement.

### D. FEDERAL COMMON LAW SHOULD NOT BE APPLIED OR CREATED TO REDUCE THE PLAN'S RIGHT TO 100% REIMBURSEMENT

The Engles also argue that federal common law requires that the Plan's reimbursement right should be reduced by one-third under this Court's decision in *Carpenter v. Modern Drop Forge Co.,* 919 F.Supp. 1198 (N.D.Ind.1995). The Plan argues that *Carpenter* is distinguishable from this case and adoption of federal common law is inappropriate because the

plan provisions unambiguously require 100% reimbursement.

In *Carpenter*, a plan participant sought to adjudicate a plan's right of subrogation. There, the plan provided a general right of subrogation: "if an eligible employee or Dependent receives, or obtains a legally enforceable right to receive, the payment from any person ... responsible for causing the employee or Dependent to sustain an accidental bodily injury or disease for which benefits are payable under this Plan, then the Employer shall have a lien upon the amount paid or to be paid by or on behalf of such responsible person...." The participant argued that an Indiana statute governing subrogation rights should be applied as federal common law to require the plan to reduce its lien by one-third for the participant's attorneys' fees.

This Court found that the Indiana subrogation statute could not be applied as federal common law. *Id.* at 1203. However, this Court also held that the participant in *Carpenter* was entitled to reduce the plan's subrogation lien by one-third under federal common law. *Id.* at 1206.

While the facts in *Carpenter* are similar to this case, at least two factors distinguish the two cases. First, this Court found that the subrogation provision in *Carpenter* was ambiguous and silent on the issue of attorneys' fees. Here, as discussed above, the Court finds that Plan's reimbursement right in the 1996 Benefit Book is extremely clear. In fact, it specifically requires 100% reimbursement and notes that attorneys' fees and court costs are the responsibility of the participant.

Second, on April 1, 1997, the Engles signed a "Reimbursement–Subrogation Agreement" with the Plan, which provided that they agreed to repay the Plan for 100% of any benefits they received at the time of a judgment or if a settlement was received. This Reimbursement–Subrogation Agreement, coupled with the succinct language in the 1996 Benefit Book, obligates the Engles to reimburse the Plan for 100% of the benefits paid. *Carpenter* is therefore inapplicable here.

■ Notwithstanding *Carpenter*, the Engles argue that the Court should create federal common law and require the Plan to reduce its reimbursement right because 100% reimbursement will unjustly enrich the Plan. However, as the Plan asserts, the unambiguous language in the 1996 Benefit Book precludes creation of federal common law here.

■ Creation of or resort to federal common law is inappropriate where its effect is to override the explicit terms of an established ERISA benefit plan. *Member Servs. Life Ins. Co.*, 130 F.3d at 958; *Ryan v. Federal Express Corp.*, 78 F.3d 123, 126 (3d Cir.1996); *Singer v. Black & Decker Corp.*, 964 F.2d 1449, 1452 (4th Cir.1992). ERISA is a highly technical statute and courts should apply it as precisely as possible rather than make adjustments through application of federal common law according to the equities of a particular case. *Johnson v. Georgia–Pacific Corp.*, 19 F.3d 1184, 1190 (7th Cir. 1994). Put another way, courts should not torture the language of an ERISA plan in an attempt to force a particular result—straightforward plan language should be given its natural meaning. *Ryan*, 78 F.3d at 126; *Burnham v. Guardian Life Ins. Co. of America*, 873 F.2d 486, 489 (1st Cir.1989).

A decision directly on point is *Cagle v. Flick*, 3 F.Supp.2d 982 (N.D.Ind.1998), in which Chief Judge Lee of this Court held:

It is clear that Indiana's "common fund" doctrine does not apply as the court may not employ federal common law when the plain language of the ERISA plan invests the plan administrator with discretion to interpret the plan, and the administrator has not interpreted the plan in an arbitrary and capricious manner.

3 F.Supp.2d at 988.

As discussed above, the language of the 1996 Benefit Book is unambiguous and

explicitly requires 100% reimbursement. Moreover, the 1996 Benefit Book invested in the Plan's Administrative Committee the discretion to interpret and apply the plan, and the Court finds the Committee's determination to be reasonable. Therefore, the Plan is entitled to 100% reimbursement for its benefits paid, without reduction for the Engles' attorneys' fees and court costs.

## IV. CONCLUSION

For the foregoing reasons, as a matter of law, the Court holds that the Plan is entitled to 100% reimbursement of its benefits paid to the Engles, without reduction for their attorneys' fees and court costs, and the Engles are not entitled to reduce the Plan's right. The Court therefore **ORDERS** the Engles to comply with the 1996 Benefit Book and to reimburse the Plan in the amount of $18,208.70. Accordingly, the Plan's motion for summary judgment is **GRANTED** and the Engles' motion for summary judgment is **DENIED.** The Clerk shall enter judgment accordingly.

SO ORDERED.