CATHERINE R. BISHOP, Plaintiff-Appellee, v. KELLY BURGARD, Defendant (Administrative Committee, as Adm'r of the Associates Health and Welfare Plan, Defendant-Appellant).

Third District   No. 3—99—0766

Opinion filed December 1, 2000.

Michael T. Graham and Peter R. Bulmer (argued), both of Jackson, Lewis, Schnitzler & Krupman, of Chicago, for appellant.

J. Kevin Wolfe (argued), of Harvey & Stuckel, Chartered, of Peoria, for appellee.

JUSTICE KOEHLER delivered the opinion of the court:

The defendant-appellant, Administrative Committee (Committee), administers the Employment Retirement Income Security Act (ERISA) plan (plan) in which the plaintiff-appellee, Catherine Bishop, participates. The Committee appeals the Tazewell County circuit court's entry of summary judgment in favor of the plaintiff-appellee, Catherine Bishop, in her action on a petition to adjudicate lien. In granting summary judgment, the circuit court reduced the amount of money Bishop is required to pay the plan as reimbursement of medical benefits the plan paid to Bishop for injuries she received in an automobile accident. On review, this court must decide whether the circuit court erred (1) in not dismissing the action for lack of subject matter jurisdiction over the petition because the federal Employment Retirement Income Security Act of 1974 (29 U.S.C. § 1001 *et seq.* (1994)) (ERISA) preempted state court action, and (2) in applying the common fund doctrine to reduce the amount Bishop must pay to the plan as reimbursement of medical benefits it paid to Bishop for injuries she received in an automobile accident. We conclude that the circuit court erred in applying the common fund doctrine rather than the terms of the plan contract. Accordingly, we reverse the circuit court's grant of summary judgment.

## FACTS

The plaintiff, Bishop, incurred medical expenses in the amount of $8,576.30 for injuries she received in an automobile accident on September 3, 1997. Bishop, an employee of Wal-Mart and a participant in the company's ERISA plan, received that amount from the plan for her injuries. The plan's benefit book for 1996 and 1998 included the following provisions:

"Right to Reduction and Reimbursement (Subrogation)

The Plan has the right to reduce or deny benefits otherwise payable by the Plan *** and *** recover (subrogate) 100% of the benefits previously paid by the Plan to the extent of any and all of the following:

Any judgment, settlement, or any payment, made or to be

made by a person for the condition giving rise to the expense or by their insurers.

\*\*\*

Attorney's fees.

Cooperation Required

The Plan requires that you or your covered dependent cooperate to guarantee reimbursements to the Plan from third party benefits. Failure to comply with this request will entitle the Plan to withhold benefits due you under the Plan Document. You or your covered dependents may not do anything to hinder reimbursement of overpayment to the Plan after you have received benefits. Note: All attorney's fees and court costs are the responsibility of the participant, not the Plan.

\* \* \*

Participant's Responsibility Regarding Right of Recovery

\*\*\*

Subrogation is when Wal-Mart pays your medical charges relating to your accident while waiting for the responsible party to settle. Repayment to the Plan of 100% will be made at the time the settlement is received by the associate, dependent, or their attorney."

Under the plan, the plan administrator has discretionary authority to resolve all questions regarding plan administration, interpretation and application.

Bishop retained counsel and, on June 9, 1998, filed a personal injury action against Kelly Burgard, the driver of the other automobile involved in the accident, seeking damages in excess of $50,000. Bishop signed an agreement under which she would pay her attorneys a percentage of her recovery as attorney fees and costs. Bishop accepted a $21,500 settlement. On February 19, 1999, Bishop filed a petition for adjudication of lien in the circuit court in which she alleged that (1) Blue Cross/Blue Shield (Blue Cross) had claimed a lien in the amount of $8,576.30 on any proceeds Bishop received as settlement; (2) asserting that Illinois' common fund doctrine did not apply, Blue Cross refused her request to reduce the lien by one-third to reflect attorney fees; (3) in *Scholtens v. Schneider*, 173 Ill. 2d 375, 671 N.E.2d 657 (1996), the Illinois Supreme Court held that ERISA's conflict preemption doctrine does not preempt Illinois' common fund doctrine; and (4) Illinois law is that the common fund doctrine requires that she, as creator of the fund, be reimbursed for the reasonable value of the legal service rendered in protecting Blue Cross's subrogation lien. On March 10, 1999, Bishop amended her petition, substituting the Associates Health and Welfare Plan as the owner of the reimbursement right against the proceeds.

On April 13, the Committee, as administrator of the Associates Health and Welfare Plan, filed an emergency petition to intervene as of right in the petition for adjudication. The Committee filed a motion to dismiss the petition pursuant to section 2—619 of the Code of Civil Procedure (735 ILCS 5/2—619 (West 1996)) on the ground that ERISA preempted the state court action. The circuit court denied the motion. On May 28, 1999, Bishop filed a motion for summary judgment. In it she asked the circuit court to apply Illinois' common fund doctrine to reduce by one-third the amount she was required to pay to reimburse the plan for attorney fees and costs she incurred in the personal injury action against Burgard. On July 12, 1999, the Committee filed a cross-motion for summary judgment against Bishop seeking full reimbursement for the medical benefits it paid Bishop as a result of the automobile accident. On August 2, 1999, the circuit court dismissed, pursuant to stipulation, the action between Bishop and Burgard. On September 9, 1999, the circuit court denied the Committee's motion and granted Bishop's motion, reducing by $3,025.09 the amount Bishop was required to pay the plan as reimbursement.

## ANALYSIS

■ Summary judgment should be granted only when the pleadings, depositions, and admissions on file, together with any affidavits, when construed in the light most favorable to the nonmoving party, show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2—1005(c) (West 1996). On review, we determine only whether the circuit court correctly concluded that no genuine issue of material fact had been raised and, if none was raised, whether it correctly entered judgment as a matter of law. *Fuller v. Justice*, 117 Ill. App. 3d 933, 938, 453 N.E.2d 1133, 1136 (1983). This court reviews a grant of summary judgment *de novo*. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102, 607 N.E.2d 1204, 1209 (1992).

Does ERISA preempt the state court action and, therefore, did the circuit court err when it did not dismiss the petition for adjudication of lien for lack of subject matter jurisdiction? The Committee contends that Bishop's petition to adjudicate lien states a *prima facie* cause of action under ERISA section 502(a)(3) (29 U.S.C. § 1132(a)(3) (1994)) in that: (1) Bishop is a plan participant; and (2) she seeks equitable relief in the nature of a declaratory judgment through the petition and she seeks other appropriate relief to redress the Committee's claim or to interpret or enforce the plan's provisions to reduce the claim under the common fund doctrine. Therefore, according to the Committee, ERISA completely preempts the state court action. The Committee

maintains that the circuit court mistakenly relied on the supreme court's holding in *Scholtens v. Schneider*, 173 Ill. 2d 375, 671 N.E.2d 657 (1996) which, the plan argues, addressed only conflict preemption and not complete preemption under ERISA.

The Committee alternatively argues that, under ERISA section 514 (29 U.S.C. § 1144 (1994)) (section 514), any state law that relates to or has a connection with an ERISA plan is preempted under the conflict preemption doctrine and an action brought under the state law must be dismissed. The Committee maintains that Bishop's petition for adjudication of lien is preempted under this conflict preemption doctrine because (1) the plan's reimbursement right arises under section 502(a)(3) and the circuit court's adjudication of the right relates to or is connected with an ERISA plan; (2) such a distribution adversely affects the plan's benefit structure and nationwide administration in that it could result in different benefits for participants in other states under different subrogation and reimbursement laws; and (3) the plan's benefits book expressly provides that participants are liable for their own attorney fees and are required to reimburse 100% of the benefits paid if they recover money in a settlement or judgment against the party responsible for the injuries.

Bishop responds that the circuit court correctly decided that it had subject matter jurisdiction. Bishop argues that (1) ERISA's purpose is to protect the interests of plan participants, not to provide a loophole through which a plan can avoid its obligations; (2) the common fund doctrine is a common law doctrine that applies to any type of recovery, not only health plans or ERISA plans, and her petition for adjudication only asks the court to apply the common law and is outside the scope of section 502(a)(3); and (3) she is not seeking additional benefits from the plan.

Further, Bishop argues ERISA does not preempt the action under the conflict preemption doctrine because (1) her petition does not fall under any of the four categories of state laws ERISA preempts, *i.e.*, (a) laws regulating the type of benefit or forms of ERISA plans; (b) laws creating reporting, disclosure, funding, or vesting requirements for a plan; (c) laws providing for the calculation of amounts paid under the plan; and (d) laws providing remedies for misconduct growing out of plan administration; and (2) ERISA's purpose is to protect plan participants, not the plan itself, and the fact that, in this case, the plan has a national scope does not change ERISA's purpose.

█ Section 502 provides:

    (a) "A civil action may be brought

        (1) by a participant or beneficiary

          ***

(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;

\* \* \*

(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violation or (ii) to enforce any provision of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a) (1994).

It further provides:

"(e) Except for actions under subsection (a)(1)(B) of this section, the district court of the United States shall have exclusive jurisdiction of civil actions under any subchapter brought by \*\*\* a participant, beneficiary, fiduciary, or any other person \*\*\*. State courts of competent jurisdiction and district courts of the United States shall have concurrent jurisdiction of actions under paragraphs (1)(B) \*\*\* of subsection (a) of this section." 29 U.S.C. § 1132(e) (1994).

Section 514 provides:

"Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supercede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan in section 1003(a) of this title and not exempt under section 1003(b) of this title." 29 U.S.C. § 1144 (1994).

■ Illinois' common fund doctrine "permits a party who creates, preserves, or increases the value of a fund in which others have an ownership interest to be reimbursed from that fund for litigation expenses incurred, including counsel fees." *Scholtens*, 173 Ill. 2d at 385, 671 N.E.2d at 662, citing *Brundidge v. Glendale Federal Bank, F.S.B.*, 168 Ill. 2d 235, 659 N.E.2d 909 (1995). The doctrine is a common law rule of general application that does not expressly refer to or depend upon ERISA plans, but applies generally to all funds created, preserved or increased by a party in which others have an ownership interest. *Scholtens*, 173 Ill. 2d at 385-86, 671 N.E.2d at 662.

■ ■ In determining whether a claim comes within the scope of section 502(a), the court examines whether (1) the plaintiff is eligible to bring a claim under the section; (2) the cause of action falls within the scope of an ERISA provision that can be enforced through section 502(a); and (3) the state law claim cannot be resolved without interpretation of a contract governed by federal law. *Speciale v. Seybold*, 147 F.3d 612, 615 (7th Cir. 1998). In *Blackburn v. Sundstrand Corp.*, 115 F.3d 493, 494 (7th Cir. 1997), the United States Court of Appeals for the Seventh Circuit determined that the district court did not have

jurisdiction over a petition to apportion a settlement fund. The court stated, "[n]ot even the most expansive reading of ERISA covers motor vehicle collisions, just because part of the recovery may inure to the benefit of a plan. The petition to apportion the fund invoked the ancillary jurisdiction of the state court and was part of that original, non-removal action." *Blackburn*, 115 F.3d at 494. Further, "it has been understood for a very long time that a federal defense to a claim arising under state law does not create federal jurisdiction ***. This is true of defenses under ERISA no less than of defenses under other federal statutes." *Blackburn*, 115 F.3d at 495. Such is the case before this court. Accordingly, we conclude that section 502(a) does not preempt Bishop's petition to adjudicate the lien.

In *Scholtens*, which the circuit court found controlling in this case, our supreme court concluded that a quasi-contractual obligation existed between the plan and Scholtens' attorney. Therefore, the circuit court concluded that the common fund doctrine applied and required the plan to pay the attorney fees. *Scholtens*, 173 Ill. 2d at 390, 671 N.E.2d at 665. However, where a specific contract governs the parties' responsibilities, quasi-contract doctrines do not apply. *F.H. Prince & Co. v. Towers Financial Corp.*, 275 Ill. App. 3d 792, 804, 656 N.E.2d 142, 151.

The plan at issue in *Scholtens* provided that the participant was to reimburse benefits to the extent they were paid by the third party. After his accident, Scholtens signed a subrogation agreement providing that, in consideration of money paid to him under the plan, the plan would be subrogated "to the extent of such payment, to any and all recovery." 173 Ill. 2d at 378, 671 N.E.2d at 659. Scholtens recovered in the circuit court, and the plan demanded complete reimbursement. Sholtens filed a petition to adjudicate the subrogation lien, and the circuit court applied the common fund doctrine to reduce the reimbursement.

Our supreme court stated: "The issue in this appeal is whether section 514 of ERISA (29 U.S.C. § 1144 (1982)) preempts application of the common fund doctrine to self-funded employee benefit plans." *Scholtens*, 173 Ill. 2d at 379, 671 N.E.2d at 660. Our supreme court reviewed the evolution of the United States Supreme Court's interpretation of section 514 and concluded:

> "In sum, we have before us a generally applicable common law doctrine which (1) is not intended to regulate the affairs of ERISA plans, (2) neither singles out such plans for special treatment nor predicates rights or obligations on the existence of an ERISA plan, and (3) does not have either the effect of dictating or restricting the manner in which ERISA plans structure or conduct their af-

fairs or the effect of impairing their ability to operate simultaneously in more than one state. The purpose of ERISA is to protect employees, not to provide loopholes through which ERISA plans can avoid paying their debts. We therefore decline to hold that the common fund doctrine is preempted by section 514(a)." *Scholtens*, 173 Ill. 2d at 396, 671 N.E.2d at 668.

Accordingly, following the supreme court's explicit ruling in *Scholtens*, the existence of an ERISA plan does not, of itself, preempt the application of the common fund doctrine under section 514. However, we do not believe that *Scholtens* requires that, in every case where attorney fees are at issue, the courts are required to apply the common fund doctrine without regard to the plan's language.

In *Engle v. Wal-Mart Associates Health & Welfare Plan*, 48 F. Supp. 2d 1114 (N.D. Ind. 1999), the plaintiff brought an action for declaratory judgment in the state courts to require the ERISA plan under which he had received benefits to reduce its reimbursement claim by one-third, the amount of the attorney fees. The district court determined that, in light of the fact that the plan required 100% reimbursement and explicitly stated that the participants were responsible for their attorney fees and costs, the Committee's decision not to reduce the reimbursement was reasonable. The district court further concluded that federal common law did not apply to reduce the reimbursement in light of the plan's explicit language. In so concluding, the district court stated, "[c]reation of or resort to federal common law is inappropriate where its effect is to override the explicit terms of an established ERISA plan. [Citations.] *** [C]ourts should not torture the language of an ERISA plan in an attempt to force a particular result—straightforward plan language should be given its natural meaning." *Engle*, 48 F. Supp. 2d at 1121.

As in *Engle*, in this case the ERISA plan explicitly provides that attorney fees and court costs are the participant's responsibility. However, we have no indication from the circuit court's order that it actually considered or acknowledged this provision. Under the facts presented in this case, we can conclude that the common fund doctrine is applicable and reduces the plan's reimbursement only if we ignore the plan's language. Accordingly, we conclude that the circuit court erred in applying the common fund doctrine to reduce the plan's reimbursement.

## CONCLUSION

In sum, we conclude that Burgard's petition to adjudicate a lien arising out of her state court personal injury action is not a claim arising under ERISA and is not preempted under section 502's complete preemption provision. Further, we conclude that where the provisions

of the plan explicitly describe the parties' responsibilities, the common fund doctrine is inapplicable. Accordingly, we reverse the circuit court's grant of summary judgment.

Reversed.

SLATER, P.J., and HOLDRIDGE, J., concur.