**United States Court of Appeals**
**FOR THE EIGHTH CIRCUIT**

No. 96-4031

HEALTH AND WELFARE PLAN FOR          *
EMPLOYEES OF REM, INC.; DOUGLAS *
MILLER, Plan Administrator for   *
the Health and Welfare Plan for *
Employees of REM, Inc.,              *
                                     *
        Plantiffs-Appellees,  *      Appeal from the United States
                              *      District Court for the
    v.                        *      District of Minnesota.
                              *
JAMES B. RIDLER,              *      [NOT TO BE PUBLISHED]
                              *
        Defendant-Appellant,  *
                              *
VICKIE MADSON; RENVILLE COUNTY, *
                              *
        Defendants.           *

Submitted:  June 13, 1997

Filed:  September 10, 1997

Before LOKEN, REAVLEY[*] and JOHN R. GIBSON, Circuit Judges.

PER CURIAM.

    James Ridler appeals the district court's[1] grant of summary judgment
to appellees, the Health and Welfare Plan for REM, Inc.

---

[*]The HONORABLE THOMAS M. REAVLEY, United States Circuit Judge
for the United States Court of Appeals, Fifth Circuit, sitting by
designation.

[1]The Honorable Richard H. Kyle, United States District Judge
for the District of Minnesota.

and the Plan Administrator. While an employee at REM, Ridler was severely injured in a motorcycle accident, and the Plan expended over $400,000 in medical care and wage loss benefits. Ridler sued those allegedly responsible for the accident in state court. Pursuant to a settlement, two of the defendants deposited their combined insurance policy limits ($450,000) into the state court pending resolution of the present action. The Plan filed this suit in federal court seeking the deposited funds under its subrogation agreement. The district court found that the Plan was entitled to reimbursement in the amount of $406,114.50, and granted appellees' motion for summary judgment. We affirm.

Ridler contends that he settled the subrogation claim with the Plan. On March 13, 1996, a representative of Great West Life and Annuity Insurance Co., to whom the Plan Administrator delegated certain non-discretionary Plan functions, offered to compromise the reimbursement claim for $137,443.00, exactly 50% of the $274,886.39 in benefits paid into the state court at that time. In a conversation between the representative, Lavina Reis, and Ridler's attorney, James Lord, on June 3, 1996, Lord stated that $137,443.00 was not enough and suggested that Great West reduce the $1 million cap by the amount paid. The representative informed him that Great West would not consider a set-off in lieu of reimbursement. Lord concluded the conversation by notifying the representative that since the parties could not resolve their differences, Ridler would pursue action in state court.

Lord told Reis, in essence, that the offer was not acceptable and then suggested that Great West forgo reimbursement for a set-off. This was an attempt to materially alter the terms of the offer, and constitutes a counter-offer. The Restatement of Contracts states:

> (1) A counter-offer is an offer made by an offeree to his offeror relating to the same matter as the original offer and proposing a substituted bargain differing from that proposed by the original offer.

> (2) An offeree's power of acceptance is terminated by his making of a counter-offer, unless the offeror has manifested a contrary intention or unless the counter-offer manifests a contrary intention of the offeree.

RESTATEMENT (SECOND) OF CONTRACTS § 39 (1979).

Under Minnesota law, an acceptance that seeks to vary, add to or qualify the terms of an offer is not positive and unequivocal, and constitutes a counter-offer and a rejection of the original offer. *Travelers Ins. Co. v. Westridge Mall Co.*, 826 F. Supp. 289, 292 (D. Minn. 1992), *aff'd*. 994 F.2d 460 (8th Cir. 1993)(*citing Hough v. Harvey*, 410 N.W.2d 53, 55 (Minn. Ct. App. 1987)). The district court did not err by finding that Lord's uncontroverted statements presented a counter-offer and a rejection, and terminated his power to accept the original offer.

Moreover, Ridler's attempt to accept the offer on June 13th was not within a reasonable time. Great West's offer did not contain a specified deadline for acceptance. Therefore, it lapsed after a "reasonable time." RESTATEMENT (SECOND) OF CONTRACTS § 41 (1979). According to both the Second Restatement and Corbin on Contracts § 2.16, what constitutes reasonable time is a fact question which depends on all the circumstances existing when the offer and attempted acceptance are made. Great West's reimbursement interest was increased by $130,000 between the time the offer was made and Ridler attempted acceptance. Despite the fact that only a short period of time had lapsed, the circumstances surrounding the offer had radically changed. The district court did not err by concluding that even if Ridler had not rejected the offer, the acceptance was not made within a reasonable time.

Ridler challenges the amount of reimbursement to which the Plan is entitled. However, Ridler has presented no evidence to support his contention that a fact issue exists with respect to the proper amount, nor does he even suggest a more appropriate figure. In his opposition to the Plan's motion for summary judgment, Ridler objected to the Plan's calculation of money expended because of double-charging on certain items. The Plan took this into consideration and adjusted the total accordingly. The district court adopted the adjusted amount. There was no error.

Ridler also challenges the Plan's status as a self-funded benefits plan subject to ERISA preemption. Specifically, Ridler asserts that there is no ERISA preemption because the Plan obtained stop-loss coverage from Great West. The Plan Administrator submitted an affidavit stating that the Plan is a self-funded, employee welfare and benefit plan created and maintained pursuant to ERISA. Ridler failed to present specific facts to controvert this description, or any evidence showing that the Plan had even obtained stop-loss insurance.[2] Regardless, ERISA preempts the application of state law even though the benefits plan holds stop-loss insurance. *Lincoln Mut. Casualty Co. v. Lectron Products, Inc. Health Plan*, 970 F.2d 206, 210 (6th Cir. 1992); *Thompson v. Talquin Bldg. Products Co.*, 928 F.2d 649, 653 (4th Cir. 1991); *United Food & Commercial Workers & Employers Arizona Health & Welfare Trust v. Pacyga*, 801 F.2d 1157, 1161 (9th Cir. 1986).

---

[2] Ridler suggests that the district court erred by denying him the opportunity to conduct discovery on the nature of the Plan, namely its relationship with Great West and whether it was self-funded. However, Ridler failed to file any affidavits opposing the motion for summary judgment showing why he needed to conduct discovery, and thus did not meet the requirements of Federal Rule of Civil Procedure 56(f) for obtaining discovery prior to a summary judgment determination.

Ridler also contends that Great West, not the Plan, has the right of subrogation and, as an insurance company, is subject to state regulation. The only basis Ridler presents for this assertion is that the subrogation agreement states "[i]f the covered person has received benefits under this Plan for an illness, a sickness, or a bodily injury caused by a third party, then *Great-West* may [seek reimbursement]." Ridler presents no legal authority to support the contention that Great West is the actual party in interest and that ERISA preemption does not apply. More importantly, the uncontroverted affidavits of the Plan Administrator and Lavina Reis show that REM employs Great West to execute the nondiscretionary function of recovering sums from third parties on behalf of the Plan.

Finally, Ridler argues that the district court erred by deferring to the Plan Administrator's interpretation of the Plan, and ruling that the Plan's subrogation interest need not be reduced by the amount of attorney's fees incurred in the underlying tort action. Judicial review of an interpretation by a Plan Administrator in whom such power is vested is reviewed for abuse of discretion. *Shell v. Amalgamated Cotton Garment*, 43 F.3d 364, 366 (8th Cir. 1994). Abuse of discretion means "extremely unreasonable," *Kennedy v. Georgia-Pacific Corp.*, 31 F.3d 606, 609 (8th Cir. 1994), and is virtually the same as arbitrary and capricious. *Lutheran Medical Center v. Contractors, Laborers, Teamsters, and Engineers Health & Welfare Plan*, 25 F.3d 616, 620 n.2 (8th Cir. 1994).

There is nothing ambiguous about the terms of the Plan, which very clearly set forth the Plan's subrogation rights. The Plan states that it may choose from four reimbursement scenarios "at its sole option," one of which is at issue here. The Plan placed participants on notice that it could exercise such a reimbursement

option.  There is nothing in the Plan that qualifies the right to reimbursement by reference to costs associated with recovery, nor is there any reference to attorney's fees in obtaining funds from third parties. The district court did not err by finding that the Plan Administrator's interpretation was not an abuse of discretion.

Ridler asserts that the district court erred by not applying the doctrine of equitable estoppel so as to allow for the recovery of attorney's fees.  Ridler did not specifically assert or argue an equitable estoppel defense before the district court, and we will not consider it here.  *See Singleton v. Wulff*, 428 U.S. 106, 120 (1976)(a federal appellate court does not consider an issue not passed upon below).

Affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.