**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED MCGILL CORPORATION,
Plaintiff-Appellant,

v.                                                                    No. 97-1046

SHARON STINNETT,
Defendant-Appellee.

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Alexander Williams, Jr., District Judge.
(CA-96-1402-AW)

Argued: June 3, 1998

Decided: August 27, 1998

Before MURNAGHAN and ERVIN, Circuit Judges, and
PHILLIPS, Senior Circuit Judge.

_____

Vacated and remanded by published opinion. Senior Judge Phillips
wrote the opinion, in which Judge Murnaghan and Judge Ervin
joined.

_____

**COUNSEL**

**ARGUED:** Matt R. Ballenger, Baltimore, Maryland, for Appellant.
Robyn B. Lupo, ERIC S. SLATKIN & ASSOCIATES, Burtonsville,
Maryland, for Appellee. **ON BRIEF:** Eric S. Slatkin, ERIC S. SLAT-
KIN & ASSOCIATES, Burtonsville, Maryland, for Appellee.

_____

**OPINION**

PHILLIPS, Senior Circuit Judge:

This is an appeal by United McGill Corporation from a district court judgment holding that an ERISA plan participant who recovers from a third party is entitled to a pro rata reduction for attorney's fees when reimbursing the plan for benefits paid. Although granting summary judgment for McGill on its claim for reimbursement, the district court held that McGill, the employer and administrator of the welfare benefit plan, must share in the costs of third-party recovery and, therefore, reduced McGill's reimbursement from Sharon Stinnett, the employee, by one-third. Because the express terms of the ERISA plan provide otherwise, we vacate and remand with instructions.

I.

On May 9, 1993, Sharon Stinnett was involved in a motor vehicle accident and suffered considerable injuries. At the time, Stinnett was an employee of United McGill Corporation and participated in McGill's welfare benefit plan ("the Plan"). Following the accident, she incurred medical bills totaling $39,000 and received medical benefit expenses from the Plan in the sum of $31,418.89. Stinnett then brought suit against the driver who caused the accident and eventually settled the claim for $100,000. Pursuant to a contingency fee arrangement, Stinnett's attorney received one-third of the settlement proceeds.

McGill, as administrator of the Plan, sought to recover the full amount of medical expenses paid to Stinnett and perfected a lien on the settlement proceeds. The terms of the Plan provide:

> REFUND TO US FOR OVERPAYMENT OF BENEFITS
>
> If you or your dependent recover money for medical, hospital, dental or vision expenses incurred due to an illness or injury for which a benefit has been paid under this plan, we will have the right to a refund from you or your dependent. The amount refunded to us will be the lesser of:

2

1. the amount you or your dependent recover;

2. <u>the amount of benefits we have paid</u> .

RIGHT OF SUBROGATION

If you or your covered dependent has a claim for damages or a right to recover damages from a third party or parties for any illness or injury for which benefits are payable under this plan, we are subrogated to such claim or right of recovery. Our right of subrogation will be <u>to the extent of any benefits paid</u> or payable under this plan, and shall include any compromise settlement. . . .

(J.A. at 69 (emphasis added).) Based on these provisions, McGill filed a complaint for declaratory judgment and then moved for summary judgment.

In both her answer to the complaint and response to the summary judgment motion, Stinnett acknowledged McGill's right to reimbursement for the medical expenses but insisted that McGill must reduce the amount of the lien by one-third to account for the attorney's fees expended in order to recover from the negligent driver. The district court agreed and, although granting summary judgment in favor of McGill, reduced McGill's award because it was "the fair, appropriate, and equitable determination under the circumstances of this case." (J.A. at 112.)

McGill now appeals that portion of the district court's decision reducing its reimbursement of benefits paid by one-third to cover Stinnett's attorney's fees.

II.

We review de novo the district court's ruling on summary judgment and are therefore guided by the appropriate standard of review of McGill's decision, as administrator of the Plan, not to apportion Stinnett's attorney's fees. <u>Bailey v. Blue Cross & Blue Shield of Va.</u>, 67 F.3d 53, 56 (4th Cir. 1995).

3

Interpretive decisions by administrators of ERISA plans are generally subject to de novo review. Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). If, however, the plan expressly grants the plan administrator discretionary authority to construe the provisions, the administrator's decision is reviewed for abuse of discretion. Id. (indicating that courts should defer when the administrator is granted interpretive discretion). Under this deferential standard, "the administrator or fiduciary's decision will not be disturbed if it is reasonable, even if this court would have come to a different conclusion independently." Ellis v. Metropolitan Life Ins. Co., 126 F.3d 228, 232 (4th Cir. 1997) (citations omitted). In certain circumstances, this deference is "lessened to the degree necessary to neutralize any untoward influence resulting from [ ] conflict[s] [arising from the administrator's financial interest in the outcome of the decision]." Bailey, 67 F.3d at 56 (citations omitted); Ellis, 126 F.3d at 233 ("The more incentive for the administrator or fiduciary to benefit itself by a certain interpretation of benefit eligibility or other plan terms, the more objectively reasonable the . . . decision must be and the more substantial the evidence must be to support it.").

In this case, the Plan grants McGill discretionary authority to "construe the terms of the Plan and resolve any disputes which may arise with regard to the rights of any persons under the terms of the Plan." (J.A. at 80.) Thus, McGill's interpretation of the Plan's reimbursement provision is entitled to some deference. However, because McGill serves as both employer and administrator and apparently retains a financial interest in reducing payments under the Plan, its decision is judicially reviewed under a less deferential abuse of discretion standard. Jenkins v. Montgomery Indus. Inc., 77 F.3d 740, 742 (4th Cir. 1996).

McGill argues that the Plan clearly, concisely, and unambiguously requires Plan beneficiaries to refund the Plan from any third-party recovery to the extent of any benefits paid. Here, Stinnett recovered $100,000 and, after paying her negotiated attorney's fees, retained approximately $67,000--more than enough to reimburse the Plan $31,418.89 for medical benefits payments received from the Plan. Accordingly, McGill contends that the district court erroneously disregarded the plain language of the Plan and crafted a solution outside the contractual arrangement between the parties.

4

In response, Stinnett maintains that the "obvious inequities" of allowing McGill to benefit without contributing to the recovery should control our decision. Even conceding that the language of the Plan is clear, Stinnett reasons that but for her retention of an attorney to pursue the claim, the Plan would not have recovered any of the benefits paid. She argues that federal common law should not allow McGill to profit from its inaction. If McGill had exercised its right of subrogation to pursue the claim itself, McGill, and not Stinnett, would have incurred attorney's fees for recovery of the medical expenses. Therefore, according to Stinnett, McGill should not be permitted to avoid these costs by simply shifting the burden of third-party recovery to the Plan beneficiary.

The district court found Stinnett's position to be persuasive. Apparently balancing the equities in favor of Stinnett and without discussing the content of either the reimbursement or subrogation provisions in the Plan, the district court ordered that McGill share in the cost of obtaining the settlement proceeds. Because this approach ignores well-settled principles of ERISA law, we must reject it.

In enacting ERISA, Congress intended for the judiciary to develop a body of federal common law to supplement the statute's express provisions. Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 56 (1987). This law-making authority is limited however to situations in which it is "necessary to fill in interstitially or otherwise effectuate the [ERISA] statutory pattern enacted in the large by Congress." Bollman Hat Co. v. Root, 112 F.3d 113, 118 (3d Cir.), cert. denied, 118 S. Ct. 373 (1997) (quotation and citation omitted); see Jenkins, 77 F.3d at 743 (indicating that the federal common law of rights and obligations under ERISA-regulated plans exists merely to fill in the statute's gaps). Courts should only fashion federal common law when "necessary to effectuate the purposes of ERISA." Singer v. Black & Decker Corp., 964 F.2d 1449, 1452 (4th Cir. 1992) (citations omitted). In reviewing ERISA-related disputes,

> [r]esort to federal common law generally is inappropriate when its application would conflict with the statutory provisions of ERISA, discourage employers from implementing plans governed by ERISA, or threaten to override the explicit terms of an established ERISA benefit plan. And,

5

> courts should remain circumspect to utilize federal common law to address issues that bear at most a tangential relationship to the purposes of ERISA.

Id. (citations omitted).

Although ERISA establishes a comprehensive regulatory scheme for employee welfare benefit plans, it does not mandate any minimum substantive content for such plans. See Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 91 (1983); Hamilton v. Air Jamaica, Ltd., 945 F.2d 74, 78 (3d Cir. 1991). Rather, one of the primary functions of ERISA is to ensure the integrity of written, bargained-for benefit plans. Dugan v. Hobbs, 99 F.3d 307, 309-10 (9th Cir. 1996); Van Orman v. American Ins. Co., 680 F.2d 301, 302 (3d Cir. 1982). To satisfy this objective, the plain language of an ERISA plan must be enforced in accordance with "its literal and natural meaning." Health Cost Controls v. Isbell, 139 F.3d 1070, 1072 (6th Cir. 1997).

Applying these principles, several of our sister circuits have expressly declined to achieve the result reached here by the district court through the application of federal common law at variance with comparable reimbursement provisions in ERISA plans. In Ryan by Capria-Ryan v. Federal Express Corp., 78 F.3d 123 (3d Cir. 1996), the Third Circuit refused to reduce an administrator's reimbursement award by prorating the covered participant's attorney's fees where the ERISA plan expressly provided otherwise. In that case, the plan provided, in pertinent part:

> [T]he Plan shall have the right to recover, against any source which makes payments or to be reimbursed by the Covered Participant who receives such benefits, 100% of the amount of covered benefits paid. . . . If the 100% reimbursement provided above exceeds the amount recovered by the Covered Participant, less legal and attorneys' fees incurred by the Covered Participant in obtaining such recovery .. ., the Covered Participant shall reimburse the Plan the entire amount of such Net Recovery.

Id. at 124. Because the covered participant's recovery, after expenses, was sufficient to reimburse the Plan in full, the court interpreted the

6

contractual language unambiguously to require repayment of all money received without a pro rata reduction for attorney's fees. The court explained that federal common law may not "override a subrogation provision in an ERISA-regulated plan on the ground that the plan would be unjustly enriched if it were to be enforced as written." Id. Therefore, it held that the district court erroneously "established a new federal common law right of recovery under ERISA; i.e. a right under federal common law to deduct from a subrogation lien a pro rata share of attorneys' fees incurred in pursuing a claim, despite explicit contrary language in the Plan's subrogation clause." Id. at 125.

The language in Ryan is arguably distinguishable, because in the operative provision, the plan did mention attorney's fees and their treatment in relation to a situation where the award minus fees was less than the benefits paid. Recently, however, the Third Circuit reiterated the Ryan approach in a case with language virtually identical to McGill's Plan. Bollman, 112 F.3d at 116 (explaining that the plan provided for reimbursement "to the extent of [any] payment" by the plan). In that case, the court further declined to incorporate general common law principles of subrogation into ERISA law because the employee had not established that full reimbursement conflicted with ERISA's policies or that adoption of a pro rata rule was necessary to effectuate such policies. Id. at 118 (citation omitted).

The Sixth and Eighth Circuits have arrived at similar conclusions. In reviewing a reimbursement provision similar to that in Ryan, the Sixth Circuit denied pro rata distribution because "federal courts may not apply common law theories to alter the express terms of written benefit plans." Health Cost Controls v. Isbell, 139 F.3d 1070, 1072 (6th Cir. 1997) (citations omitted). The Eighth Circuit has also expressed agreement with the Ryan holding but created a default rule if the language of the benefits plan is inconclusive. Waller v. Hormel Foods Corp., 120 F.3d 138, 141 (8th Cir. 1997). In that case, the subrogation clause merely stated that the company would be subrogated to all rights of recovery but did not delineate any specific amount and lacked any language like that found in the McGill Plan. Id. Because of this "silence," the court concluded as a matter of federal common law that the employee was entitled to a pro rata offset of the value of the legal services to the employer. Id.; see also McIntosh v. Pacific

7

Holding Co., 120 F.3d 911 (8th Cir. 1997) (same). We find these decisions persuasive.

Notwithstanding the above authority, Stinnett maintains that it would be unconscionable to force a Plan beneficiary to reimburse the Plan for full benefits without deducting a pro rata share of the costs required to obtain the reimbursement funds. If, as in Waller, the Plan was silent as to the amount of reimbursement, Stinnett's argument would be more compelling. Under the McGill Plan, however, Stinnett cannot escape the unambiguous language that obligates her to repay the benefits paid in full without mention of a pro rata deduction for her expenses. See Ryan, 78 F.3d at 127 ("Enrichment is not `unjust' where it is allowed by the express terms of the . . . plan.") (quoting Cummings by Techmeier v. Briggs & Stratton Retirement Plan, 797 F.2d 383, 390 (7th Cir. 1986)).

Where, as here, the language of the Plan does not qualify the right to reimbursement by reference to the costs associated with recovery, we are bound to enforce the contractual provisions as drafted. Applying federal common law to override the Plan's reimbursement provision would contravene, rather than effectuate, the underlying purposes of ERISA. See Coleman v. Nationwide Life Ins. Co., 969 F.2d 54, 58 (4th Cir. 1992) ("Use of estoppel principles to effect a modification of a written employee benefit plan would conflict with ERISA's emphatic preference for written agreements.") (quotation and citation omitted). "The interpretive tool of a growing body of federal common law applicable to ERISA actions is not a license to rewrite the Plan to the Court's tastes." Health and Welfare Plan for Employees of REM, Inc. v. Ridler, 942 F. Supp. 431, 435 (D. Minn. 1996), aff'd, 124 F.3d 207, 1997 WL 559745 (8th Cir. Sept. 10, 1997) (unpublished). Irrespective of how federal common law would divide the settlement proceeds absent contractual guidance, McGill is entitled to full recovery based on the plain language of the Plan.*

_____

*We leave for another day how to treat situations where the beneficiaries' recovery from the third party after deducting attorney's fees is actually less than the plan's reimbursement claim, thus ostensibly requiring the beneficiary to pay out of her own pocket to meet the plan's claim. See Bollman, 112 F.3d at 117 (refusing to address this hypothetical sce-

8

We therefore vacate the judgment of the district court and remand with instructions to enter judgment for McGill for the full amount of reimbursement claimed.

SO ORDERED

_____

nario because the third party settlement in that case fully financed both the attorney's fees and the plan's claim). We do note that future disputes over such an anomalous result can easily be avoided by more careful drafting of subrogation and reimbursement provisions. See Health Cost Controls, 139 F.3d at 1071 (indicating that plan specified that "in no event will the amount of reimbursement . . . exceed . . . [t]he amount actually recovered from that part of judgment or settlement in excess of the amount necessary to fully reimburse the Employee. . . for out-of-pocket expenses incurred, including attorney fees"); Ryan, 78 F.3d at 125 (reciting that subrogation provision provided that"if the payment you receive from the third party, less your attorneys' fees and other legal expenses, is not enough to reimburse benefit payments at 100%, you must reimburse the plan 100% of what is left after paying your attorneys' fees and other legal expenses").

9