FAIRFIELD MANUFACTURING COMPANY, INC., as Plan Administrator of the Fairfield Manufacturing Company, Inc. Health Care Plan, and the Fairfield Manufacturing Company, Inc. Health Care Plan, Plaintiffs,

v.

Robert HARTMAN and Aaron Hartman, Defendants.

No. CIV. 4:00cv0027AS.

United States District Court, N.D. Indiana, Hammond Division at Lafayette.

Feb. 23, 2001.

Gary J. Dankert, Tara L. Schulstad, Indianapolis, IN, for Plaintiffs.

Michael J. Stapleton, Cheryl M. Knodle, Lafayette, IN, for Defendants.

## MEMORANDUM AND ORDER

ALLEN SHARP, District Judge.

This matter is before the Court on Plaintiffs', Fairfield Manufacturing Company, Inc. ("Fairfield"), as Plan Administrator of the Fairfield Manufacturing Company, Inc. Health Care Plan ("Plan"), and the Plan, motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. The Plaintiffs' are seeking full reimbursement from the Defendants' Robert and Aaron Hartman for certain medical expenses paid by the Plan as a result of the injuries sustained by Aaron Hartman. The Defendants' ("Hartmans") while not specifically filing a cross motion for summary judgment ask that the Court enter summary judgment in their favor, requiring Fairfield to pay a propor-tionate share of attorney fees and expenses incurred in recovering the benefits that are to be used in reimbursing the plan.

## I. BACKGROUND

Both Fairfield and the Hartmans are in agreement as to the material facts in this matter. For all times relevant to this case, Robert Hartman was employed by Fairfield. Fairfield provided health care and medical benefits to its employees by way of an employee benefit plan. The plan is a self-funded "employee welfare benefit plan" created under the Employee Retirement Income Security Act of 1974 ("ERISA"). Fairfield serves as the administrator and fiduciary of the Plan.

Robert Hartman and his dependent Aaron Hartman were covered under the terms of the Plan. On November 6, 2000, Aaron Hartman was injured in an accident which involved the alleged liability of various third parties. As a result of Aaron's injuries, the Hartmans submitted medical claims to the plan which totaled approximately $320,000 at the time of the filing in this case. The Hartmans' filed a civil lawsuit against the alleged tortfeasors. As a result of the lawsuit, the Hartmans entered into a settlement agreement with four of the alleged tortfeasors and have dismissed the fifth tortfeasor. The Hartmans' claim was settled for $3,550,000. The attorneys' fees totaled some $1,185,000 in addition to litigation expenses in the amount of $24,845.

Fairfield contends that pursuant to the language in the governing documents it has a right to subrogation and 100% reimbursement of the medical benefits it has paid on behalf of Aaron Hartman for his injuries. The reimbursement provisions contain the following language:

> The Plan has the right to full subrogation and reimbursement of any and all amounts paid by the Plan, to or on behalf of, a Covered Person, if the Covered Person receives any sum of money from any third party in connection with

any accident ... The Covered Person shall be responsible for all expenses of recovery from such third parties, including but not limited to, all attorneys' fees,.. which fees and expenses shall not reduce the amount of reimbursement to the Plan required of the covered person. (Article XIV; Subrogation Rights)

The Plan's right to reimbursement as set forth herein shall be payable first from sums received from third parties and such reimbursement shall continue until the Covered Person's obligations hereunder to the Plan are fully discharged, even though the Covered Person does not receive full compensation or recovery for his/her injuries damages, loss or debt. This right to subrogation pro tanto shall exist in all cases. (Article XIV; Subrogation Rights)

Furthermore, Fairfield points to the language in the Summary Plan Description which states in pertinent part:

The Plan reserves the right to subrogation and recovery of amounts paid.... By participating in the Plan, you and your Dependents are agreeing that the Plan is subrogated to all rights of you and your Dependents and acknowledge that the Plan will have a lien against any sum of money received from a third party ... The covered person is responsible for all expenses of recovery from third parties including attorney fees, which amounts will not reduce the amount of reimbursement payable to the plan. (Exhibit B; SPD).

The Plan also provides specific language with respect to the duties and authority conferred upon the Plan Administrator. Article XII of the Plan provides the following discretion granted to the Administrator:

full, discretionary authority to enable it to carry out its duties under the plan, including but not limited to, the authority to determine eligibility under the Plan and to construe and interpret the terms of the Plan and to determine all questions of factor law arising hereunder and to authorize coverage in a manner which is cost effective under the Plan. All such determinations and interpretations shall be final, conclusive, and binding on all persons affected thereby. The Plan Administrator or its designee shall have full, discretionary authority to correct any defect, supply any omission or reconcile any inconsistency and resolve ambiguities in the Plan in such a manner and to such extent as it may deem expedient, and subject to Article XII, the Plan Administrator or its designee shall be the sole and final judge of expediency.

(Section 12.03 of the Plan)

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is to be granted "forthwith" when, after an adequate period for discovery one party is unable to show a genuine issue as to a material fact on which that party will bear the burden of proof at trial, so long as judgment against that party is appropriate as a matter of law. *Department of Commerce v. U.S. House of Representatives*, 525 U.S. 316, 327, 119 S.Ct. 765, 142 L.Ed.2d 797 (1999); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When there are no genuine issues of material fact, contract interpretation is particularly well-suited for summary judgment. *Anstett v. Eagle–Picher Industries*, 203 F.3d 501 (7th Cir.2000).

## III. STANDARD OF REVIEW

██ In *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989) the Supreme Court set out the applicable standard of review for a decision made by a plan administrator in an ERISA case. A *de novo* standard of review is not applied in cases where a benefit plan gives the administrator or fiduciary discretionary authority to construe the terms of the plan. *Id.* at 115, 109 S.Ct. 948. In situations where the administrator is given discretionary authority courts ap-

ply an arbitrary or capricious standard in reviewing the administrator's decision. *Russo v. Health, Welfare & Pension Fund,* 984 F.2d 762, 765–766 (7th Cir.1993); *Exbom v. Central States, Southeast and Southwest Areas Health and Welfare Fund,* 900 F.2d 1138 (7th Cir.1990). Here the administrator of Fairfield's Plan has broad discretionary authority in making determinations with respect to the Plan.[1]

## IV. DISCUSSION

The simple issue before this Court is whether the Plan's subrogation lien with respect to the medical claims paid on behalf of Aaron Hartman should be reduced to reflect a pro rata share of attorney fees.

### A. Background of ERISA

In 1974 Congress enacted the Employee Retirement Income Security Act or ERISA in response to wide disuniformity among various state laws as they applied to employee benefit plans. 29 U.S.C. § 1144 (West 1998). The purpose of the Act was to afford employers with a uniform set of administrative procedures rather than trying to comply with a different set of procedures for creating health plans in each state. *Fort Halifax Packing Co. Inc. v. Coyne,* 482 U.S. 1, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987). With this point in mind, Federal Courts are quick to establish that ERISA's concern is with the administration of the benefits plan and not the actual design or contents of the plan. The actual terms and conditions of the plan are left to the discretion of the various employers who create the plan. *Hickey v. A.E. Staley Mfg.,* 995 F.2d 1385, 1388 (7th Cir.1993). ("Decisions of this Circuit have recognized that plan providers have great latitude in determining whom to include in a plan and the scope of the plan."); See Also; *Nazay v. Miller,* 949 F.2d 1323, 1329 (3rd Cir.1991).

In enacting ERISA congress felt that a body of federal common law should be developed in order to establish uniformity in applying various concepts of law to areas not addressed specifically by the benefits plan. See; *Franchise Tax Bd. v. Construction Laborers Vacation Trust,* 463 U.S. 1, 24 n. 26, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983) (quoting 120 Cong.Rec. 29942 (1974) (remarks of Senator Javits)); see also *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 110, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989); *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 56, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). However, various legal principles recognized under federal common law may not be employed by a Court where there exists specific language in a plan to the contrary. *Cutting v. Jerome Foods, Inc.,* 993 F.2d 1293, 1297 (7th Cir.) *cert denied,* 510 U.S. 916, 114 S.Ct. 308, 126 L.Ed.2d 255 (1993). *Trustmark Life Ins. Co. v. University of Chicago Hosps.,* 207 F.3d 876, 884 (7th Cir.2000).

■ The principles of contract interpretation require this Court to interpret the terms of this ERISA plan in an ordinary and popular sense as would a person of average intelligence and experience. *Swaback v. American Info. Techs. Corp.,* 103 F.3d 535, 540–541 (7th Cir.1996). "Extrinsic evidence should not be used where the contract is unambiguous." *Id.* at 541; *GCIU Employer Retirement Fund v. Chicago Tribune Co.,* 66 F.3d 862, 865 (7th Cir.1995) (citing *Bidlack v. Wheelabrator Corp.,* 993 F.2d 603, 608 (7th Cir.), cert. denied, 510 U.S. 909, 114 S.Ct. 291, 126 L.Ed.2d 240 (1993)).

### B. Plan's language does not provide for cost sharing of Attorney's fees or legal costs

■ The various circuit court of appeals have consistently found that a Plan will not be required to pay a share of the attor-

---

1. The Plan administrator has "full discretionary authority to enable it to carry out its duties under the Plan, including but not limited to, the authority to determine eligibility under the Plan and to construe and interpret the terms of the Plan...." (Exhibit A. Plan § 12.03).

ney's fees when the contract language dealing with subrogation and reimbursement liens is unambiguous. *Ryan v. Federal Express Corp.*, 78 F.3d 123 (3rd Cir. 1996); *Walker v. Wal–Mart Stores Inc.*, 159 F.3d 938 (5th Cir.1998). In reviewing a reimbursement provision similar to that in *Ryan*, the Sixth Circuit denied pro rata distribution stating "federal courts may not apply common law theories to alter the express terms of written benefit plans." *Health Cost Controls v. Isbell*, 139 F.3d 1070, 1072 (6th Cir.1997) (citations omitted); See Also; *United McGill Corp. v. Stinnett*, 154 F.3d 168, 172–73 (4th Cir. 1998); (held that the health plan unambiguously required the participant to reimburse the plan in full, with no reduction for the costs of obtaining the third-party recovery.)

In *Engle v. Wal–Mart Associates Health & Welfare Plan*, 48 F.Supp.2d 1114 (N.D.Ind.1999), this Court was presented with a similar set of circumstances as the case here. In *Engle* Magistrate Judge Springmann held that the Plan's decision to require 100% reimbursement, without reduction for attorney's fees and costs was reasonable. *Id.* at 1114. Further Magistrate Judge Springmann found that the unambiguous language of the benefit book precluded the application of federal common law to reduce the plan's reimbursement right by one-third. *Id.* The Court rejected the argument that the Plan would be unjustly enriched citing the unambiguous language of the plan documents. *Id.* at 1121. Reaffirming the principle that federal common law is inappropriate where its effect would override the explicit terms of an established ERISA benefit plan. *Id.*

In this case, both the Plan and the Summary Plan Description contain specific and unambiguous language providing for 100% reimbursement without a reduction for attorneys fees.

The Covered Person shall be responsible for all expenses of recovery from such third parties, including but not limited to all attorneys' fees incurred in collection of such third party payments ... (Exhibit A; Plan, Article XIV, p. 62–63) The Covered person is responsible for all expenses of recovery from third parties, including attorney fees, which amounts will not reduce the amount of reimbursement payable to the plan. (Exhibit B; SPD, p. 20).

Fairfield in keeping with the clear language of the Plan documents is seeking full reimbursement of the medical benefits paid. Therefore, any principles of federal common law whether it be under the common-fund doctrine or some other theory are simply not applicable under the terms of this agreement.

**C. Administrator's interpretation of the Plan**

■ The Hartmans contend that the administrator's interpretation and construction of the Plan leads to an arbitrary result. An administrator's decision is arbitrary and capricious when it is willful and unreasonable and fails to consider or disregards the facts or law. *Plummer v. American Inst. of Certified Public Accountants*, 97 F.3d 220, 229 n. 8 (7th Cir. 1996). Under this standard of review, the Court will uphold any reasonable determination even where this Court would likely favor a different result. *Ross v. Indiana State Teacher's Assn. Ins.*, 159 F.3d 1001, 1009 (7th Cir.1998), cert. denied 525 U.S. 1177, 119 S.Ct. 1113, 143 L.Ed.2d 109 (1999); *Mers v. Marriott Intl. Group Accidental Death and Dismemberment Plan*, 144 F.3d 1014, 1021 (7th Cir.) cert. denied, 525 U.S. 947, 119 S.Ct. 372, 142 L.Ed.2d 307 (1998).

■ Specifically, the Hartmans argue that the Plans terms involving reimbursement for "covered charges" and limiting the amount of out of pocket expenses that a beneficiary may incur creates a conflict with the 100% reimbursement provision. (See Exhibit A, Plan Article VII). However, the limitation of out of pocket expenses on behalf of the beneficiary are restricted only to "covered charges" as that term is

defined by the Plan.[2] The "covered charges" do not include a beneficiary's attorneys fees or other cost of litigation expressly considered under the subrogation and reimbursement provisions. The provisions dealing with out of pocket expenses are intended to limit the amount of money a beneficiary will be required to spend for recommended medical services. The reimbursement provision is specifically intended to return the Plan to the financial status it maintained before the occurrence of the beneficiaries injuries. Therefore no conflict exists between these two distinct provisions.

In further support of their argument, the Hartmans assert that the Plan requires them to act as a *de facto* collection agency. However, the reimbursement provisions do not require the participant to bring such an action. The Plan requires only that a participant not impair the Plan's rights to seek the recovery of such amounts that the Plan has provided to a beneficiary. (Exhibit A, Plan, Article XIV, p. 63).

### D. Failure of the Administrator to consistently interpret the Plan

Next, the Hartmans argue that administrator has abused his discretion by arbitrarily applying the 100% reimbursement provision. The Hartmans cite instances in the past where Fairfield has not sought 100% reimbursement but rather agreed to reduce the lien. Fairfield counters this contention by stating that in the certain instances where the subrogation liens were reduced full reimbursement was not possible. (Lewis Deposition at p. 57). In this case the administrator determined, in light of the $3.5 million settlement amount, full

2. The Plan defines "covered charges" as those charges for covered services which are medically necessary for the care and treatment of an injury or illness of a covered person and are rendered or recommended by a Physician . . . subject to the applicable deductible amount if any, the copayment percentage and the copayment limit, . . . . (Exhibit A, Plan, Article VII, p. 45)

recovery was possible and should be pursued. This decision was in accordance with the language of the reimbursement provision and a reasonable exercise of the administrator's authority provided under the Plan.

■ The fact that Fairfield did not seek full reimbursement in every case where a beneficiary incurred attorney's fees does not alter the terms of the unambiguous provisions in the Plan. *McNab v. General Motors Corp.*, 162 F.3d 959 (7th Cir.1998) *cert. denied* 526 U.S. 1115, 119 S.Ct. 1762, 143 L.Ed.2d 793 (1999); (When employer deviates from plan, the plan remains what it was, and claims for benefits continue to be evaluated in light of its written criteria.); See Also; *In re Unisys Corp. Retiree Medical Benefit "ERISA" Litigation*, 58 F.3d 896, 902 (3rd Cir.1995); *Musto v. American General Corp.*, 861 F.2d 897, 910 (6th Cir.1988) *cert. denied*, 490 U.S. 1020, 109 S.Ct. 1745, 104 L.Ed.2d 182 (1989); and *Gordon v. Barnes Pumps Inc.*, 999 F.2d 133, 137 (6th Cir.1993). The fact that Fairfield may have compromised liens in the past is not indicative of the Plan's failure to employ standard procedures in seeking reimbursement. Rather the administrator has conceded that standard procedure is to pursue full reimbursement. (Lewis Deposition pp. 50, 57–58, 67). The exhibits provided by the Hartmans belie the assertion that the administrator did not initially seek full reimbursement in similar cases. (See D's Exhibits B & C).

In those cases, although a compromise was reached in the final amount between the parties. The administrator initially sought full reimbursement from the beneficiary.

The Summary Plan Description further describes "covered charges" as "the reasonable and customary charges for covered services which are medically necessary for the care and treatment of you or your dependent's injury or illness, as recommended by a health care provider." (Exhibit B, SPD, Art. II(h))

The Hartmans further contend that the administrator failed to review the individual facts in considering whether the Hartman's case merited compromise. However, this Court in *Engle* found that where the committee knew that an injury had occurred, benefits were paid by the Plan, the beneficiary had subsequently sought and received a settlement against a third party the decision to seek reimbursement was found to be reasonable.48 F.Supp.2d. at 1120.

Similarly, the Plan Administrator here reviewed the following facts before making its decision. First, Aaron Hartman, a dependent beneficiary was injured in an accident allegedly caused by third party tortfeasors. Second, the Plan had a lien in the amount of $320,000 for amounts paid for medical services rendered to Aaron. Third, the Hartmans had recovered approximately $3.5 million from the various third party tortfeasors. The Plan administrator based his decision to seek reimbursement in full based on these facts. In light of the facts, unambiguous language contained in the Plan and controlling legal authority the Fairfield Administrator's decision to seek full reimbursement was not unreasonable.

**E.  Unconscionability**

■  Next, the Hartmans argue that the Plan's requirement of 100% reimbursement creates an inequitable and unconscionable result and that the Court should impose federal common law to override the Plan's unambiguous language. In *Wal–Mart Stores, Inc. Associates' Health and Welfare Plan v. Wells*, 213 F.3d 398 (7th Cir.2000), the Seventh Circuit applied the common fund doctrine in requiring the Plan to share the cost of attorneys' fees. However, in *Wells* the plan documents did not expressly repudiate common-fund principles, thus failing to alter the allocation of attorney's fees under those established principles. Courts are in agreement that when there exists clear unambiguous lan-

guage providing for full reimbursement without a reduction for attorneys fees the common fund principles do not apply. See *Ryan v. Federal Express, supra*, 78 F.3d at 127 ("Enrichment is not 'unjust' where it is allowed by the express terms of the . . . plan.") (quoting *Cummings by Techmeier v. Briggs & Stratton Retirement Plan*, 797 F.2d 383, 390 (7th Cir.1986)).

The Fourth Circuit in *United McGill Corp. v. Stinnett, supra*, 154 F.3d 168, 173 (4th Cir.1998), provides a poignant discussion on the unconscionability of such language in a benefits plan:

> Stinnett maintains that it would be unconscionable to force a Plan beneficiary to reimburse the Plan for full benefits without deducting a pro rata share of the costs required to obtain the reimbursement funds. If, as in Waller, the Plan was silent as to the amount of reimbursement, Stinnett's argument would be more compelling. Under the McGill Plan, however, Stinnett cannot escape the unambiguous language that obligates her to repay the benefits paid in full without mention of a pro rata deduction for her expenses. Where, as here, the language of the Plan does not qualify the right to reimbursement by reference to the costs associated with recovery, we are bound to enforce the contractual provisions as drafted. Applying federal common law to override the Plan's reimbursement provision would contravene, rather than effectuate, the underlying purposes of ERISA.

"The interpretive tool of a growing body of federal common law applicable to ERISA actions is not a license to rewrite the Plan to the Court's tastes." *Id.* at 173; *Health and Welfare Plan for Employees of REM, Inc. v. Ridler*, 942 F.Supp. 431, 435 (D.Minn.1996), aff'd, 124 F.3d 207, 1997 WL 559745 (8th Cir. Sept. 10, 1997) (unpublished). The circuit court opined that "Irrespective of how federal common law would divide the settlement proceeds ab-

sent contractual guidance, McGill is entitled to full recovery based on the plain language of the Plan." *United McGill Corp.* at 173.

Similarly, the Plan language states that a "Covered Person shall be responsible for all expenses of recovery from such third parties, including but not limited to, all attorneys' fees incurred in collection of such third party payments." (See Exhibit A, B). It is readily apparent the Plan's language was intended to override the application of the various federal common law default rules. The Court has no choice but to follow the clear language of the Fairfield Plan and the controlling legal authority.

### V. Prejudgment Interest

██ Fairfield contends that it is entitled to prejudgment interest on the amount of reimbursement. The presumption in favor of prejudgment interest, especially in ERISA cases, is widely recognized. *Rivera v. Benefit Trust Life Insurance Co.*, 921 F.2d 692, 696–697 (7th Cir.1991); *Lorenzen v. Employees Retirement Plan of the Sperry and Hutchinson Co.*, 896 F.2d 228 (7th Cir.1990). Whether to award pre-judgment-interest to an ERISA plaintiff is "a question of fairness, lying within the court's sound discretion, to be answered by balancing the equities." *Trustmark Life Ins. Co. v. University of Chicago Hosps.*, 207 F.3d 876, 885 (7th Cir.2000). Fairfield contends that the delay in reimbursement has resulted in increased expenses on the part of the Plan. Furthermore, Fairfield contends that the failure to award such interest would render any restitution to the Plan incomplete taking into consideration the time value of money. Both parties agreed that the amount in dispute should be placed in a separate account awaiting the decision of the Court. It can

be expected that the funds were placed in an adequate interest bearing account. Therefore, the award of prejudgment interest should be available without any added loss to the Hartmans.

Fairfield asks that the prejudgment interest be calculated based on the 52–week average of the United States Treasury Bill. (See P's Brief at P. 17) 28 U.S.C. § 1961 provides that such interest shall be calculated from the date of the entry of judgment based on the average auction price of the fifty two week United States Treasury bill. The most recent auction of 52 week Treasury bills was held on November 28, 2000. The price accepted for the United States Treasury bills auctioned on that day, according to the Treasury public notice, resulted in an equivalent coupon issue yield of 6.052 percent. Given the amount of reimbursement due, the Court finds the total amount of prejudgment interest to be $15,548.00. [3]

### VI. CONCLUSION

For the foregoing reasons, the Plaintiffs' motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure is now **GRANTED**. The Defendants are now ordered to reimburse to the Plaintiffs the sum of $320,000 plus prejudgment interest in the amount of $15,548.00. **IT IS SO ORDERED.**

---

**3.** The court calculated the total amount of interest due on the reimbursement beginning on May 8, 2000 (filing of the complaint) through February 23, 2001 (Date of order) based on a monthly compounding formula.