Kristin FORSLING and John Forsling, Plaintiffs,

v.

J.J. KELLER & ASSOCIATES, INC., Defendant and Third–Party Plaintiff

v.

Shelby Mutual Insurance Co. Third–Party Defendant.

No. 02–C–0234.

United States District Court, E.D. Wisconsin.

Jan. 15, 2003.

John T. Schomisch, Dilley, Schomisch & Associates, L.L.C., Appleton, WI, for plaintiffs.

Matthew S. MacLean, John C. Lapinski, Michael Best & Friedrich, LLP, Milwaukee, WI, for J.J. Keller & Associates, Inc..

Jason J. Franckowiak, Thomas J Binder, Otjen Van Ert Lieb & Weir, Milwaukee, WI, for Shelby Mutual Insurance Company.

## DECISION AND ORDER

GRIESBACH, District Judge.

In this action, Plaintiffs seek a determination of their rights under an Employee Health Benefit Plan governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001, *et seq.* (ERISA). Federal jurisdiction exists by virtue of 28 U.S.C. §§ 1331 and 2201, and 29 U.S.C. § 1132.

Plaintiffs filed this action on March 5, 2002, against J.J. Keller & Associates ("Keller") seeking a declaration that they were entitled to receive the entire amount due under a policy of automobile liability insurance issued by Shelby Mutual Insurance Company, notwithstanding Keller's claim to a portion of the policy proceeds. Keller answered and filed a third-party complaint against Shelby Mutual, asserting that as the sponsor and administrator of the J.J. Keller Health and Welfare Benefit Plan (the "Plan"), Keller had a reimbursement and/or subrogation interest in approximately $35,000 of medical expenses which it had already paid on behalf of plaintiff Kristin Forsling, a Keller employee. Both parties now seek summary judgment,[1] and for the reasons stated herein I will grant summary judgment in favor of Keller and order that Shelby Mutual reimburse Keller so as to satisfy the terms of the subrogation language of the Plan.

## I. BACKGROUND

The operative facts are as brief as they are unfortunate. Plaintiff Kristin Forsling was hit by a car in Outagamie County, Wisconsin, on November 13, 2000. As a result, she sustained or exacerbated lower

---

1. Keller has not moved for summary judgment, but instead requests that I grant summary judgment *sua sponte* pursuant to *Gold-* *stein v. Fidelity and Guar. Ins. Underwriters, Inc.*, 86 F.3d 749, 750 (7th Cir.1996).

back injuries which required multiple surgeries costing approximately $48,000. (Forsling Aff. at 1). She also has claims for lost wages and her husband has a claim for loss of consortium, neither of which are at issue here. Pursuant to an ERISA plan operated by Forsling's previous employer, BlueCross BlueShield of North Dakota paid for some of her initial medical costs, but it has subsequently waived its entire subrogation interest in the amount of $12,485.21. (Compl.Ex. C). Forsling began her employment at Keller in March 2001, and the bulk of the remainder of her bills, amounting to $35,122.13, have been covered by the Keller Plan, which is a self-funded ERISA plan. (Compl.¶ 20)

The driver of the car that hit Forsling had $50,000 of coverage from Shelby Mutual. Shelby Mutual has agreed to pay the full $50,000, but has retained the funds subject to the release of pending liens and determination of subrogation interests, which brings us to the present dispute.

## II. ANALYSIS

Keller believes that subrogation language in the Plan documents entitles it to full reimbursement for the $35,122.13 it has paid on behalf of Kristin Forsling. Plaintiffs assert that Keller's claim is not authorized by the Employee Retirement Income Security Act of 1974 ("ERISA"), and, in the alternative, that the common law doctrines of the "make whole" rule and the common fund should defeat Keller's claim. As neither party has asserted the existence of any genuine issue of material fact which would preclude summary judgment, this case is ripe for summary judgment on the questions of law presented.

*A. Equitable Action Authorized by ERISA.*

■ Congress has authorized plan fiduciaries to bring civil actions "to obtain other appropriate equitable relief" to redress violations of the terms of an ERISA plan. 29 U.S.C. § 1132(a)(3) (ERISA § 302(a)(3)). Thus, plan fiduciaries cannot bring legal actions for damages under this section, instead being limited to "those categories of relief that were typically available in equity" *Mertens v. Hewitt Associates*, 508 U.S. 248, 256, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993).

The Supreme Court has recently addressed the law-equity distinction as it relates to ERISA § 502(a)(3). In *Great–West Life & Annuity Ins. Co. v. Knudson,* a case relied on both by plaintiffs and Keller, the Court held that § 502(a)(3), *supra,* did not authorize a suit by an ERISA plan against a beneficiary for reimbursement where the settlement funds from a personal injury suit had already been distributed and where the defendant was not in possession of the funds. *See* 534 U.S. 204, 122 S.Ct. at 712–18, 151 L.Ed.2d 635 (2002). The court distinguished restitution at law and restitution in equity. Writing for the majority, Justice Scalia observed that "a plaintiff could seek restitution in equity, ordinarily in the form of a constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property". *Id.* at 714. But "where the property ... or its proceeds have been dissipated so that no product remains, [the plaintiff's] claim is only that of a general creditor". *Id.* Thus, the court found that the relief sought by the plan was legal, rather than equitable, because it essentially sought to impose personal liability for damages upon the defendants, a classic form of legal action. 122 S.Ct. at 712–13. And, as defendants were not in possession of the funds at issue,

the kind of restitution that petitioners seek, therefore, is not equitable-the im-

position of a constructive trust or equitable lien on particular property-but legal-the imposition of personal liability for the benefits that they conferred upon respondents.

122 S.Ct. at 715.

■ Thus, under *Knudson*, a truly equitable action under § 502(a)(3) must meet certain criteria. First, a defendant must be in possession of the disputed funds. *See Bauhaus USA, Inc. v. Copeland*, 292 F.3d 439, 445 (5th Cir.2002)("the defendants in this case, like the Knudsons in *Great West*, are not in possession of the disputed funds, a fact that Justice Scalia found extremely important in *Great West*.") Second, the disputed funds must not have been dissipated. *Knudson*, 122 S.Ct. at 714. Third, the party seeking equitable relief must not be attempting to impose personal liability on the opposing party. *Id.* at 715. Finally, the money or property at issue must be identifiable and must belong in good conscience to the party seeking relief. *Id.*

■ Plaintiffs rely on the fact that the *Knudson* court took a restrictive view of the types of equitable actions that a plan can bring under ERISA. The present case is no different, they argue, because the ultimate substance of Keller's claim is a request for money it believes it is owed under the Plan, and money damages are classically legal actions. Keller admits (as it must) that it is seeking to recover money, but argues that it has followed the lead of *Knudson* and has adequately stated

grounds in equity for the imposition of a constructive trust on the property at issue here. It is not, as in *Knudson*, seeking to impose personal liability upon the plaintiffs, as plaintiffs are not in possession of the property in dispute, and the funds are held by a named defendant and have not been dissipated.

I agree with Keller that *Knudson* supports its position. First, as a third-party plaintiff, Keller is seeking funds to which it is contractually entitled under the plan's reimbursement provision. Second, the funds it seeks can "clearly be traced to particular funds or property in the defendant's possession." *Id.* at 714. Keller is not seeking "to impose personal liability on" Forsling, but merely "to restore to the [Plan] particular funds or property in the defendant's [Shelby Mutual's] possession," funds which have not been dissipated. *Id.* at 714–15. I therefore conclude that the plain language of *Knudson* authorizes Keller's third-party action as an equitable action for a constructive trust over the funds possessed by defendant Shelby Mutual.[2]

Despite its recent vintage, several courts have had occasion to interpret *Knudson* and apply its holding in similar, though not identical, circumstances. For example, in *Allison v. Wellmark, Inc.*, the plaintiff (as here) filed a petition for a declaratory judgment, seeking a declaration that defendant Wellmark had no right of subrogation to the proceeds of the plaintiff's underinsured-motorist coverage. 2002 WL

---

**2.** Plaintiffs do not persuasively contest that the Plan's subrogation language would be applicable here if Keller's claim is authorized by ERISA. The plan language reads, in relevant part,

In the event the Plan provides a Plan Member (including a Dependent) with any benefits ("Plan Benefits") as a result of any Injury or Sickness and the Plan Member recovers any monies (whether by settle-

ment, judgement or otherwise) from any third-party because of or in any way related to the Injury or Sickness, the Plan Member shall first reimburse the Plan out of such recovery, before the Plan Member is entitled to any portion of the recovery and without regard to the sufficiency of the recovery, to the extent of the Plan Benefits that have been or will be provided to the Plan Member ... (Def. Br. at 3).

31818946 (N.D.Iowa, Oct. 15, 2002). In its summary judgment motion, Wellmark sought the imposition of a constructive trust over the insurance proceeds which had already been paid to the plaintiff. *Id.* at *1. Finding that it would be inequitable for the plaintiff to retain the insurance proceeds in light of the plan's subrogation provision, the court found that "equity requires the imposition of a constructive trust on the insurance proceeds at issue". *Id.* at *9.

Similarly, in *IBEW–NECA Southwestern Health and Benefit Fund v. Douthitt*, a plan sought to impose a constructive trust over funds held by a beneficiary's lawyer's client trust account. 211 F.Supp.2d 812 (N.D.Tex.2002). The court found that the funds held by the attorney were "clearly traceable to Defendant and in good conscience belong to Plaintiffs pursuant to the terms of the Reimbursement Agreement." *Id.* at 816. Moreover,

> [u]nlike the plaintiffs in *Great–West Life [v. Knudson]*, Plaintiffs here do not seek to impose personal liability on Defendant. Instead, Plaintiffs seek a constructive trust over particular funds, separate and apart from Defendant's personal resources, and only to the extent of the benefits it provided.

*Id.* at 816.

In these two cases I find persuasive support for a narrower reading of *Knudson* than that suggested by plaintiffs. *Knudson,* by its own language, did not bar plan administrators from bringing an action to obtain reimbursement for benefits they paid. Instead, the court expressly embraced the use of constructive trusts and other forms of equitable relief directed toward the funds from which reimbursement was sought while still in the possession of the defendant, as opposed to an action at law for damages against the injured party. The mere fact that Keller is seeking money does not *ipso facto* turn its action into a legal action for damages, as plaintiffs appear to suggest. If that were the case, the very mechanism of a constructive trust would be vitiated. Thus, the legal action addressed in *Knudson* is sufficiently distinguishable from the facts of this case, as the funds at issue here are identifiable, have not been dissipated, are still in the control of a defendant, and in good conscience belong to Keller pursuant to the subrogation provisions of its Plan. I therefore conclude that Keller is entitled to a constructive trust over the funds held by Shelby Mutual to the extent of Keller's payments made on behalf of Kristin Forsling.

### B. The "Make Whole" Rule

■ Plaintiffs also contend that if Keller's claim is indeed an equitable one, any recovery owing to Keller must fail because the plaintiffs here have not yet been made whole. After the one-third contingency fee for the Forslings' lawyer, plus fees and costs, they would be left with only $32,616.19 of the $50,000 policy. (Pl. Br. at 9). Since they would then presumably owe Keller the approximately $35,000 that it paid under the plan, and since plaintiffs have additional non-medical damages such as Mr. Forsling's loss of consortium claim and Mrs. Forsling's lost wages, "the Forsling's [sic] will receive a net negative recovery by bringing a law suit." (Pl. Br. at 8). Stated another way, after Keller receives its money and the attorney's fees are deducted, the Forslings would actually *owe* money as a result of bringing this lawsuit.

Essentially, plaintiffs' argument is that it is inequitable to require a tortfeasor's liability insurer to reimburse a health benefit plan for payments it has made before the injured plaintiff recovers the amount necessary to make her whole. In other

words, plaintiffs contend that under the circumstances of this case, it cannot be said that "in good conscience," the proceeds of the Shelby Mutual policy ought to go to the plan. In support of their contention, they cite the recent decision of the Wisconsin Supreme Court in *Ruckel v. Gassner,* 2002 WI 67, 253 Wis.2d 280, 646 N.W.2d 11, wherein the Court held that under Wisconsin law, the "made whole" doctrine is a principle of equity that overrides aven clear and unambiguous policy language requiring the insured to first reimburse the insurer. Such clauses, the Court held, are "inequitable." 646 N.W.2d at 11.

But *Ruckel* itself recognized that, under ERISA, self-funded employee benefit plans with subrogation/reimbursement clauses override the "made whole" doctrine. 646 N.W.2d at 19, n. 7. And given that an employer is free to refuse to provide a health benefit plan in the first place, it is unclear why, if the employer does provide such a plan, it may not condition benefits on the agreement of the members to reimburse the plan from payments received from other parties responsible for the injury. Having accepted benefits under a plan that expressly required reimbursement from money received from responsible third parties, regardless of the amount received, it does not seem inequitable that plaintiff fulfill her obligation under the plan. Although the fact that she apparently will not be fully compensated for her loss is deserving of compassion, it does not justify disregarding the clear terms of the agreement under which she accepted benefits from the Plan. It would hardly be equitable to force the Plan, or any other party for that matter, to pay for a loss it did not cause and has no legal obligation to cover beyond what it specifically agreed to in writing.

In any event, the fact that plaintiffs might not be made whole does not compel a finding in their favor. The right to be made whole, under federal law, is only a "gap filler" right. *Cutting v. Jerome Foods, Inc.,* 993 F.2d 1293, 1297 (7th Cir. 1993)("the make whole rule is just a principle of interpretation, it can be overridden by clear language in the plan.") That is, the right to be made whole exists "only when the parties are silent." *Johnson et al. v. Ziegler et al.,* 648 N.W.2d 480, 484, 255 Wis.2d 751, 2002 WI App 103 (Wis.Ct. App.2002).

Here, the parties are not silent. The plan provides for full reimbursement of Keller "without regard to the sufficiency of the recovery." (Def. Br. at 3). As the plan invests Keller with the "complete discretionary power to interpret all of the terms and provisions of the Plan," I must defer to its interpretation that any make whole rights were disclaimed unless this interpretation is arbitrary and capricious. *See Russo v. Health, Welfare & Pension Fund, Local 705, Int'l Brotherhood of Teamsters,* 984 F.2d 762, 765 (7th Cir. 1993). I conclude that Keller's interpretation is neither arbitrary nor capricious. Indeed, even under a *de novo* review, the phrase "without regard to the sufficiency of the recovery" would sufficiently disclaim any make whole rights. Accordingly, I conclude that the make whole rule does not apply.

### C. The Common Fund Doctrine

■ Plaintiffs (more to the point, plaintiffs' attorney) contend that the common fund doctrine should apply and that attorney's fees should be deducted from the $50,000 before any payments are made to Keller. Under this equitable doctrine, when a lawyer through his efforts creates a common fund in which others are entitled to share, the lawyer must generally

be compensated. *See Wal–Mart Stores, Inc. v. Wells,* 213 F.3d 398, 402 (7th Cir. 2000). The common fund rule, like the make whole doctrine, can be disclaimed from a plan, however. *See United McGill Corp. v. Stinnett,* 154 F.3d 168, 172–73 (4th Cir.1998)("Where, as here, the language of the Plan does not qualify the right to reimbursement by reference to the costs associated with recovery, we are bound to enforce the contractual provisions as drafted."); *Fairfield Manuf. Co., Inc. v. Hartman,* 132 F.Supp.2d 1142, 1145–46 (N.D.Ind.2001).[3]

The language of the Keller Plan provides for full reimbursement of "any monies" and requires the plan member to "first reimburse the Plan out of such recovery". (Def. Br. at 3). The Plan continues, "Any amount of any recovery from a third-party remaining after full reimbursement of the Plan shall belong to the Plan Member, subject to any reasonable attorney's fees and other costs related to the recovery." *Id.* Thus, the Plan contemplates that the Plan will be fully reimbursed first. Only after this full reimbursement will the member be entitled to any funds, subject to any obligation to pay any costs and attorney's fees. Thus, Keller's reading that the common fund doctrine does not apply is a perfectly reasonable one.[4]

### D. Attorney's Fees

Finally, plaintiffs assert that their attorney's lien and Mr. Forsling's loss of consortium claim have priority over Keller's subrogation rights. As for the attorney's lien, plaintiffs have offered no support for the theory that this lien would take priority over the subrogation interest of Keller. Instead, plaintiffs merge this concept with that of the common fund doctrine, suggesting only that it would be "manifestly inequitable" to allow Keller to recover first. (Pl. Rep. Br. at 10). As noted above, however, the common fund doctrine will not be applied to this case. As for Mr. Forsling's claims, plaintiffs offer no support for the argument that his claim for loss of consortium would be linked to the insurance proceeds at issue here.

Finally, Keller requests an award of its attorneys' fees pursuant to ERISA § 502(g)(1), 29 U.S.C. § 1132(g)(1), which allows a court discretion to grant fees. In light of the paucity of available funds in this case, however, I will decline to enter an award of attorney's fees on Keller's behalf.

Accordingly, for the reasons stated herein, **IT IS ORDERED** that plaintiffs' motion for summary judgment is DENIED, and summary judgment is GRANTED in favor of J.J. Keller & Associates, Inc.; that plaintiffs' claim is dismissed and the counterclaim of J.J. Keller & Associates, Inc., is granted; and

**IT IS FURTHER ORDERED AND ADJUDGED** that J.J. Keller & Associates, Inc., as sponsor and administrator of the J.J. Keller & Associates Health and Welfare Benefit Plan, is entitled to reimburse-

---

**3.** The Seventh Circuit has not explicitly addressed this issue. In *Wal–Mart v. Wells, supra,* Judge Posner applied the common fund doctrine to a settlement obtained by an attorney where the plan language was ambiguous and where the plan administrator did not have discretion to interpret the plans. 213 F.3d at 403.

**4.** Though it is not dispositive, it is worth noting that there was no litigation undertaken in order to secure the $50,000 at issue. There is no evidence of any extensive settlement proceedings or negotiations; it appears that Shelby simply agreed to provide the full $50,000 of coverage. Thus, this case does not involve the unjust enrichment of Keller of the sort that permeates many other common fund cases where lawyers' extensive efforts could otherwise go uncompensated.

ment for payments made by the plan on behalf of the plaintiff, Kristin Forsling in the amount of $35,122.13; and

**IT IS FURTHER ORDERED AND ADJUDGED** that with respect to the third-party claim of J.J. Keller & Associates, Inc., against Shelby Mutual Insurance Company, a constructive trust is hereby imposed upon the insurance proceeds due and payable under the policy of insurance issued by the third-party defendant Shelby Mutual Insurance Company to Levi P. Schroeder for $35, 122.13 and Shelby Mutual Insurance Company is hereby ordered to pay said amount to J.J. Keller & Associates, Inc.

The Clerk of Court shall enter judgment in favor of J.J. Keller & Associates in the amount of $35,122.13.