**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 24-1772**

———————

TRACY W. PENLAND,

       Plaintiff - Appellant,

v.

METROPOLITAN LIFE INSURANCE COMPANY,

       Defendant - Appellee.

———————

Appeal from the United States District Court for the District of South Carolina, at Anderson.  Henry M. Herlong, Jr., Senior District Judge.  (8:21–cv–03000–HMH)

———————

Submitted:  April 23, 2025                        Decided:  June 13, 2025

———————

Before WYNN, HARRIS, and BENJAMIN, Circuit Judges.

———————

Affirmed by unpublished opinion.  Judge Wynn wrote the opinion, in which Judge Harris and Judge Benjamin joined.

———————

**ON BRIEF:**  M. Leila Louzri, FOSTER LAW FIRM, LLC, Greenville, South Carolina, for Appellant.  J. Derrick Quattlebaum, Jonathan D. Klett, HAYNSWORTH SINKLER BOYD, P.A., Greenville, South Carolina, for Appellee.

———————

Unpublished opinions are not binding precedent in this circuit.

WYNN, Circuit Judge:

Tracy Penland seeks restoration of long-term disability benefits under his former employer's long-term disability plan, which is administered by Metropolitan Life Insurance Company ("MetLife"). Having exhausted MetLife's appeals process, he filed suit in district court under the Employee Retirement Income Security Act of 1974 ("ERISA"). The district court determined that Penland had not met his burden of proving long-term disability under the terms of the plan.

On appeal, Penland raises three principal arguments in support of reversal. None succeed. Accordingly, we affirm the district court's opinion.

I.

The underlying facts in this case are set forth in our previous opinion and need not be repeated at length. *See Penland v. Metro. Life Ins. Co.* (*Penland II*), No. 22-1720, 2024 WL 1528957 (4th Cir. Apr. 9, 2024). As is relevant to this appeal, Penland stopped working in August 2015 following complications from colon surgery and various other conditions. He applied for long-term disability benefits from his employer, and in February 2016, those benefits were approved.

Under the terms of his employer's long-term disability plan, disability "means that, due to Sickness or as a direct result of accidental injury . . . [the claimant is] receiving Appropriate Care and Treatment and complying with the requirements of such treatment unless, in the opinion of a Physician, future or continued treatment would be of no benefit."

2

J.A. 1499.[1] For the first twenty-four months of the sickness or accidental injury, the claimant must be unable to earn "more than 80% of [their] Predisability Earnings at [their] Own Occupation from any employer in [their] Local Economy." J.A. 1499. Then, "after such period, [a claimant must be unable to earn] more than 60% of [their] Predisability Earnings from any employer in [their] Local Economy at any gainful occupation for which [they] are reasonably qualified taking into account [their] training, education[,] and experience." J.A. 1499.

The long-term disability plan also contains limitation provisions. As is relevant here, if the disability is "due to" mental or nervous disorders or diseases, neuromuscular, musculoskeletal, or soft tissue disorder, or chronic fatigue syndrome and related conditions, the lifetime maximum disability benefits is limited to twenty-four months. But the limitation does not apply to disabilities due to neuromuscular, musculoskeletal, or soft tissue disorder if the claimant can produce "objective evidence of" a series of conditions, including radiculopathy.[2] J.A. 1520.

In January 2021, MetLife sent Penland an initial termination of benefits letter. This letter explained that MetLife had referred Penland's claim to two independent medical consultants: Dr. Joshua Lewis, who specializes in internal medicine, and Dr. Naveed Natanzi, who specializes in physical medicine and rehabilitation. These consultants determined that Penland had already received the maximum lifetime long-term disability

---

[1] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.
[2] The plan defines radiculopathy as "disease of the peripheral nerve roots supported by objective clinical findings of nerve pathology." J.A. 1521.

3

benefits. The letter specified that Penland's medical records do not support the presence of non-limited conditions that cause symptoms sufficient to prevent him from performing any gainful occupation.

Penland filed an appeal with MetLife. As part of that appeal, he submitted additional documents including a statement of disability and assorted medical records from Nurse Kimberly Cox, his primary medical advisor; medical records from Dr. Jay Patel, who oversaw his pain management; and medical records from Dr. Manjakkollai Veerabagu, who oversaw treatment of his various gastrointestinal conditions. MetLife sought review of the complete medical records by Dr. Marvin Pietruszka, a third independent medical consultant. Dr. Pietruszka determined that Penland did not have functional limitations and did not present objective evidence of radiculopathy. In September 2021, MetLife denied Penland's appeal.

Thereafter, Penland filed this action in the District of South Carolina to have his benefits restored. The district court employed a modified version of summary judgment and affirmed MetLife's appeal denial. *Penland v. Metro. Life Ins. Co.* (*Penland I*), No. 8:21-cv-3000, 2022 WL 2235863 (D.S.C. June 22, 2022). Penland then appealed to this Court. But in the time between the district court's decision and Penland's appeal to us, this Court issued *Tekmen v. Reliance Standard Life Insurance Co.*, 55 F.4th 951 (4th Cir. 2022), wherein we rejected the quasi-summary-judgment approach previously used by some courts, including the district court in *Penland I*, for ERISA benefits cases. *Id.* at 961. *Tekmen* instead required that district courts use the procedure for bench trials provided by Federal Rule of Civil Procedure 52. *Id.* Accordingly, upon receiving Penland's original

4

appeal in this case, we vacated the district court's opinion and remanded the matter for that court to conduct proceedings consistent with our *Tekmen* decision. *Penland II*, 2024 WL 1528957, at *3.

In accordance with our decision, the district court issued findings of fact and conclusions of law under Federal Rule of Civil Procedure 52. *Penland v. Metro. Life Ins. Co.* (*Penland III*), No. 8:21-cv-3000, 2024 WL 3327366 (D.S.C. July 8, 2024). In doing so, it again affirmed MetLife's denial of Penland's administrative appeal.

Penland timely appealed to this Court.

## II.

At the outset, we point out that the record in this case provides ample evidence that Penland experiences significant pain. And, based on this record, nobody can dispute that Penland's conditions render him unable to fully enjoy daily life. But this appeal solely concerns the question of whether the terms of the plan provide for Penland's continued receipt of long-term disability benefits or whether those terms preclude coverage due to the lifetime-maximum-coverage provision. To have his benefits restored, Penland advances three arguments that we will address in turn by reviewing the district court's factual findings for clear error and its legal conclusions de novo. *Tekmen*, 55 F.4th at 964.

## A.

Penland first argues that the district court erred by interpreting the plan's limitation provision to require him to prove disability without reference to limited medical conditions. "ERISA plans are contractual documents which, while regulated, are governed by established principles of contract and trust law." *Johnson v. Am. United Life Ins. Co.*, 716

5

F.3d 813, 819 (4th Cir. 2013) (quoting *Haley v. Paul Revere Life Ins. Co.*, 77 F.3d 84, 88 (4th Cir. 1996)). "A paramount principle of contract law requires us to enforce the terms of an ERISA insurance plan according to 'the plan's plain language in its ordinary sense,' that is, according to the 'literal and natural meaning' of the Plan's language." *Id.* at 819–20 (first quoting *Wheeler v. Dynamic Eng'g, Inc.*, 62 F.3d 634, 638 (4th Cir. 1995); and then quoting *United McGill Corp. v. Stinnett*, 154 F.3d 168, 172 (4th Cir. 1998)). So, we must "determine 'the common and ordinary meaning as a reasonable person in the position of the plan participant would have understood the words.'" *Id.* at 820 (quoting *Cardoza v. United of Omaha Life Ins. Co.*, 708 F.3d 1196, 1203 (10th Cir. 2013)).

The plan states that benefits are limited to twenty-four months if a claimant is disabled "due to" conditions including neuromuscular, musculoskeletal, or soft tissue disorder. J.A. 1520. Penland contends that when there is "a plan term stating that disabilities due to certain conditions are limited, an insurer is required to perform a review that encompasses the totality of a claimant's medical conditions, including those that would be limited by the policy if they were the sole cause of the disability." Opening Br. at 41 (emphases removed). In other words, Penland believes that the limitation provision only takes effect if limited conditions are the sole cause of a claimant's disability.

But, as the district court pointed out, the ordinary meaning of "due to" is "because of," which, in turn, "connotes a but-for causation standard." *Penland III*, 2024 WL 3327366, at *12. And an event can have multiple but-for causes. *Id.* (quoting *Bostock v. Clayton County*, 590 U.S. 644, 656 (2020)). So, the argument that non-limited conditions must be the "sole cause" of the disability for the provision to apply fails based on the

6

ordinary meaning of the words in the provision. Penland's interpretation would also render the provision all but meaningless. To illustrate, under Penland's reasoning, a claimant who had exhausted the lifetime limitation for a disabling soft tissue injury would be eligible for benefits again if they could prove that they also had high blood pressure. Consequently, the district court did not err when it did not consider Penland's limited conditions.

B.

Second, Penland argues that his case falls under an exception to the limitation provision because he presented objective evidence of radiculopathy. He does so by pointing to the medical records he provided from Dr. Patel. Dr. Patel incorporates into his file the diagnoses of two other doctors who had examined a June 2019 MRI of Penland's back, both of whom reported that he had symptoms related to radiculopathy. So, Dr. Patel included "radiculopathy" under his assessment for each of his nine appointments with Penland. J.A. 89, 93, 97, 101, 103, 108, 112, 116, 120.

But nowhere in the record does Dr. Patel explain how he reached the diagnosis of radiculopathy; he only states the conclusion. Penland argues that "Dr. Patel need not offer any reason or explanation because the MRI itself supports the diagnosis of radiculopathy based on the information contained therein as well as the interpreting physician's findings." Opening Br. at 47. But the record does not contain the MRI, nor does it contain the findings of the interpreting physicians. For this reason, the district court rightly assessed that "although his notes quote the findings of two physicians who interpreted Penland's June 2019 MRI, Dr. Patel does not offer any reasoning or explanation for why the MRI supported his diagnoses." *Penland III*, 2024 WL 3327366, at *13.

7

Penland also argues that "Dr. Patel based his diagnoses on the symptoms that Penland reported, which is another tool used by medical providers in diagnosing radiculopathy." Opening Br. at 47. But a patient's self-reported symptoms of pain and fatigue are the exact sort of evidence that the objective-evidence bar is designed to eliminate.

Additionally, two of MetLife's independent physician consultants found no evidence of radiculopathy. Dr. Pietruszka determined that "the medical information does not support the claimant having measurable evidence of radiculopathy." J.A. 37. Similarly, Dr. Natanzi reported that even though "[t]he claimant does have a history of degenerative disc disease and facet arthropathy involving his cervical, thoracic, and lumbar spine," "radiculopathy is not supported based on the totality of the available information." J.A. 292.

Based on the totality of evidence in the record, it was not clear error for the district court to find that Penland has not presented objective evidence of radiculopathy.

C.

Third, Penland contends that the district court committed clear error by finding that he had not met his burden of showing "Disability" under the plan. As the district court noted, the plan sets out three conditions that must be satisfied to establish disability: (1) the claimant must be suffering from a "Sickness"; (2) the claimant must be complying with the physician's treatments; and (3) the claimant must be unable to earn more than 60% of his predisability income. J.A. 1499; *see Penland III*, 2024 WL 3327366, at *11. Penland claims

that the district court erred when it determined that his non-limited conditions leave him able to earn more than 60% of his predisability earnings.

To substantiate this point, he argues that the district court should have given more weight to the opinion of Nurse Cox rather than to MetLife's independent consulting physicians. The district court explained its reasoning for discounting Nurse Cox's opinion, writing that the "two-page statement of disability, however, is largely conclusory and is entitled to little weight" because she "simply listed Penland's twelve conditions, noted his subjective symptoms, and then stated her conclusion" that he was disabled. *Penland III*, 2024 WL 3327366, at *16. The district court also recognized that "Nurse Cox did not specify what documents she reviewed, and her statement provides no rationale for why Penland was unable to 'perform any activity for an extended period of time.'" *Id.* (quoting J.A. 83). Finally, the district court observed that Nurse Cox did not list any functional limitations that would impede Penland's ability to work. *Id.*

Instead, the district court credited the work done by two of MetLife's independent physician consultants. The court noted that Dr. Lewis had reviewed Penland's claim five times, and each time found that the medical information did not support limitations on Penland's ability to work. *Id.* at *14–15. And the district court emphasized that "Dr. Pietruszka addressed each of Penland's non-limited conditions and explained why none was disabling." *Id.* at *15. The district court also observed that both doctors identified which documents they reviewed and provided a justification for their conclusions.

Penland raises a series of arguments that the district court erred in making these findings. First, he contends that his "treatment providers' opinions should hold more

9

weight" than those who had never examined him. Opening Br. at 34. But—as Penland rightly acknowledges—the Supreme Court has been clear that ERISA "plan administrators are not obliged to accord special deference to the opinions of treating physicians." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 825 (2003). Consequently, courts may not "impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation." *Id.* at 834. And *Tekmen* made it clear that this rule applies to district courts making findings of facts and conclusions of law as well. 55 F.4th at 965–66. So long as the district court credits reliable evidence over the opinion of Penland's primary care physicians, the district court has committed no error.

Second, Penland argues that Nurse Cox's opinion is more reliable than that of MetLife's reviewing physicians because the latter had not been provided the plan documents that defined disability. But it is difficult to discern why this would result in clear error. Dr. Pietruszka analyzed each non-limited condition to determine whether it caused functional limitations. Dr. Lewis also listed which conditions he analyzed and confined his review to internal medicine, which excluded the limited conditions and at least one non-limited condition. Even though their reports did not include an excerpt of the plan definition of disability as did Nurse Cox's, the district court was still able to parse out their medical assessments. Where the reports fully disclosed the conditions they examined, the exclusion of plan definitions is not so significant as to render the consultants' findings less persuasive or less helpful.

10

Third, Penland notes that the termination of benefits occurred during the height of the COVID-19 pandemic when many of his appointments were conducted through telehealth and fewer medical records were generated. But that would not have precluded Penland from gathering already existing evidence, such as the 2019 MRI, or asking Nurse Cox for a more thorough written report.

Finally, Penland attempts to discredit Dr. Pietruszka's report because it discussed each condition individually as opposed to the combined effect of all of Penland's conditions. But the district court made the specific finding that, because Pietruszka had stated that Penland did not suffer "from a medical condition or *combination of conditions* of such severity to warrant" limitations, Pietruszka "evaluated Penland's conditions as a whole, rather than in isolation." *Penland III*, 2024 WL 3327366, at *15 (quoting J.A. 42). It was not clear error for the district court to come to this conclusion.[3]

---

[3] Because this Court finds no clear error in the district court's determination that Penland's non-limited conditions do not support functional limitations that would affect the occupations available to him, we need not reach Penland's argument that the district court clearly erred by not directly addressing the findings of MetLife's vocational rehabilitation consultant. Such findings presuppose the existence of work restrictions that necessitate a search for alternate occupations. Without those restrictions, any error regarding occupational surveys is immaterial.

11

III.

We thus conclude that the district court did not err when it determined that Penland did not meet his burden of proving long-term disability under the terms of the plan. The judgment of the district court is affirmed.

We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this Court and argument would not aid the decisional process.

*AFFIRMED*